UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IVAN BLACK,

                                   CASE NO. 2:10-CV-11211

           Plaintiff,        JUDGE BERNARD A. FRIEDMAN
                                   MAGISTRATE JUDGE PAUL J. KOMIVES

v.


MICHIGAN DEPARTMENT OF
CORRECTIONS,

           Defendant,
_____/


**REPORT AND RECOMMENDATION REGARDING
DEFENDANT MDOC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
AND MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST
ADMINISTRATIVE REMEDIES (Doc. Ent. 11)**

Table of Contents

I.      RECOMMENDATION ................................................................................................. 2

II.    REPORT ................................................................................................................ 2
     A.    Background ................................................................................................. 2
     B.    Plaintiff's March 26, 2010 Complaint ...................................................... 5
     C.    Defendant MDOC's June 23, 2010 Dispositive Motion ........................... 6
     D.    Applicable Law .......................................................................................... 7
         1.    Fed. R. Civ. P. 12(b)(6) ................................................................. 7
         2.    Fed. R. Civ. P. 56 ........................................................................... 9
     E.    Analysis ..................................................................................................... 11
         1.    Plaintiff's complaint seeks three (3) forms of relief. ..................... 11
         2.    Defendant MDOC is entitled to dismissal of plaintiff's claim for approximately $2,000.00 "to pay [filing] fee only or [a] mandate[d] disposition of [the] [filing] fee[,]" because "[t]he Eleventh Amendment bars Plaintiff's request for [$2,000.00 in] monetary damages from MDOC." ......................................................................................... 12
         3.    Defendant MDOC is not entitled to summary judgment with respect to plaintiff's claim to have his major misconduct points removed. ........................................... 16
         4.    Defendant MDOC is entitled to summary judgment with respect to plaintiff's request to be reclassified to a lower management level. ................................................ 20
         5.    Defendant MDOC's request for costs and attorney fees is premature. ......................... 24

III.   NOTICE TO PARTIES REGARDING OBJECTIONS ......................................................... 25

I.     **RECOMMENDATION:**  The Court should grant in part and deny in part defendant

MDOC's motion to dismiss for failure to state a claim and motion for summary judgment for

failure to exhaust administrative remedies (Doc. Ent. 11).

II.    **REPORT:**

A.     **Background**

On February 7, 2007, Ivan Ray Black was sentenced from one (1) to eight (8) years for a

December 12, 2006 violation of Mich. Comp. Laws §§ 750.197c / 769.11 (Assault of Prison

Employee).  *See* www.michigan.gov/corrections; Doc. Ent. 11-2; Case No. 2007-212492-FH

(Oakland County).

On June 24, 2009, Black received a major misconduct report at Ionia Maximum

Correctional Facility (ICF) from P. Pline for substance abuse on the basis that Black refused a

drug test.  Pline described the violation as follows:

> At 1128 hours, Prisoner Black 497061 arrived at the control center where he was
> told he ha[d] to supply a urine sample for a random drug test.  At that time he was
> given [a] cup and water as he couldn't supply one without water.  At 1231 hours,
> I told Black his hour was up and he need[ed] to provide a sample.  He stated[,]
> "I'm GID and I can't provide a sample for a man[.]"  Black did not supply [m]e
> with a specimen.

Black was placed on bond pending hearing.  The report was reviewed by Patterson on June 25,

2009.  Doc. Ent. 1 at 4; Doc. Ent. 11-3.  It appears that Black provided a two-page, handwritten

statement regarding this charge.[1]  A hearing took place on July 8, 2009 and again on July 14,

---

[1]Therein, Black alleges that the charge of Substance Abuse under MDOC PD 03.03.105
(Prisoner Discipline) does not require a urine sample within one hour; alleges that he has Gender
Identity Disorder, citing MDOC PD 04.06.184 ("Gender Identity Disorders in Prisoners");
claims he gave a urine sample anyway and questions why he still received a major misconduct;
claims he informed the Corrections Officer that he had GID and could not supply a urine sample
at that time; and claims that, while he and the officer were in the restroom, the officer made a
"sexual comment about drinking [Black's] urine."  Doc. Ent. 1 at 6.  He also accuses people of

2

2009, at which time Hearing Officer Jackson found Black guilty of substance abuse (043).

Black received three days in top lock (from July 16, 2009 to July 19, 2009).  Doc. Ent. 1 at 5;

Doc. Ent. 11-6.  Black requested a rehearing,[2] but Hearings Administrator Stapleton disapproved

the request on or about August 7, 2009.  Doc. Ent. 11-7.

Apparently in September 2009, Black received another major misconduct report; this

time, his status pending the hearing was "Non-Bond List."  Doc. Ent. 1 at 14.  On September 21,

2009, a hearing was conducted on Black's misconduct charge of threatening behavior (012).

Doc. Ent. 1 at 13.

Two days later, on September 23, 2009, Black was reclassified to "Level V Transition

General Population."  The Security Reclassification Notice from ICF indicates that "[f]urther

misconducts may result in reclassification to Administrative Segregation."  Doc. Ent. 1 at 13.

That same day, James Downing conducted a review of Black's Security Classification Screen

(ICF).  Downing noted that Black had a Confinement Level of I.  Downing further noted that

Black's management score at the September 1, 2009 screening was 24, but four (4) points were

_____

stealing funds from his prisoner trust account, as well as stealing his mail and other property.
Furthermore, Black claims, staff was using his money "for sexual favor with other prisoners[.]"
According to Black, he wrote several grievances and was subjected to hate crimes on the basis of
his transgenderism.  Doc. Ent. 1 at 7.
Additionally, he noted that he was shot in the groin, which prevents him from urinating.  Black
claims that staff knows this.  According to Black, the points were not removed when he showed
them his medical records.  Doc. Ent. 1 at 7.  Attached to this statement were November 2004
records from Detroit Receiving Hospital which indicate that Black had a past medical history of
"[a]sthma as well as gunshot wound to the right groin."  Doc. Ent. 1 at 8-10.  *See also* Doc.
Entries 11-4, 11-5.

[2]In his request for rehearing, Black explained, "I never said that the [GID] had anything to do
with me [using] the 'restroom[.]'"  Furthermore, he stated, "it's very offensive to have [an]
officer watch me use the restroom."  Also, Black claimed, the issue was frivolous, because "[i]f
they wanted [him] to urinate [to test for drugs][,] [he] would have been locked up."  Doc. Ent.
11-7.

added, making Black's New Management Level V (28 points).[3]  Erica Huss approved Black's

True Security Level as V and his Actual Placement Level as IV for "[a]ccess to medical needs."

Doc. Ent. 1 at 12; Doc. Ent. 11-12.

On November 18, 2009, Black was classified to administrative segregation for "serious

threat to physical safety of others."[4]  On or about February 25, 2010, approval was sought to

reclassify Black from Administrative Segregation to General Population so that Black could be

discharged from acute care to RTP (Residential Treatment Program).  Warden Kenneth A.

Romanowski (WCC) approved the request.  Doc. Ent. 1 at 15.

On May 13, 2010, David W. Dulworth conducted a review of Black's Security

Classification Screen (Gus Harrison Correctional Facility (ARF)).  Based on a New Management

Level of "35," Dulworth described Black's True Security Level as V.  Based upon "[a]ccess to

medical/mental health treatment[,]" Lee McRoberts approved an Actual Placement Level of IV.

Doc. Ent. 11-13.[5]

---

[3]This increase of four (4) points was based on two (2) acts "resulting in separate major
misconducts[,]" one of which was "non-bondable or resulted in felony conviction[.]"  Doc. Ent.
1 at 12.  Attached to Black's March 26, 2010 complaint is undated prisoner stationery which
discusses the change in his management level from 24 points to 28 points.  Therein, Black
claims that he "only caught 1 misconduct [Threatening Behavior] for the month of September[,]"
therefore, his total should be 27 points.  According to Black, Downing agreed and stated "if [I
have] to fix the [purposeful] mishap [I will]."  Doc. Ent. 1 at 11.

[4]The description of this reason notes "MMR's [Major Misconduct Report's] Threatening
Behavior, DDO [Disobeying a Direct Order], Assault and Battery-staff victim, Threatening
Behavior[.]" Doc. Ent. 1 at 15.

[5]On August 5, 2010, the Clerk of the Court sent Black a NOTICE REGARDING PARTIES'
RESPONSIBILITY TO NOTIFY COURT OF ADDRESS CHANGE.  Doc. Ent. 14.  On August
16, 2010, Black mailed to the Court a notice that his current address was the Woodland Center
Correctional Facility (WCC) in Whitmore Lake, Michigan.  The notice stated WCC was a
temporary facility, and it was filed on August 19, 2010.  Doc. Ent. 15.
However, plaintiff is currently incarcerated at the Macomb Correctional Facility (MRF) in New

**B.     Plaintiff's March 26, 2010 Complaint [6]**

On March 23, 2010, while incarcerated at ARF, plaintiff filed a pro se prisoner civil

rights complaint pursuant to 42 U.S.C. § 1983 against the Michigan Department of Corrections

(MDOC).  Plaintiff's March 26, 2010 complaint states as follows: "[F]alse charges[.] Staff

seems to make up [their] own rules[.] I was over 6 month[s] ticket free when staff who are ex-

convicts, [felons], and criminal[s] who should not be in charge of young (myself) inmates.  They

press . . . us for sexual favors and when [I do not] give it to them they write false claims[.]

[Everything] I state can be backed up 100% by Policy Directive[s][.] I [am claiming] false major

misconducts[.]"  Also, it appears plaintiff is alleging that "staff is using young people . . . to

profit other off the computer[,]" and staff is "jealous of Black History Month[.]"  Furthermore,

plaintiff claims, he is a "victim of [his family's] honorable, good, honest works."  Doc. Ent. 1 at

3.

Plaintiff's complaint was accompanied by an application to proceed without prepayment

of fees or costs.  Doc. Ent. 2.  Following Magistrate Judge Whalen's March 31, 2010 order

requiring signed certification of inmate's trust account from authorized prison official (Doc. Ent.

_____

Haven, Michigan.  *See* www.michigan.gov/corrections, "Offender Search."

[6]In addition to the instant case, plaintiff has filed several other cases: *Black v. MDOC*, Case No.
08-11197-PDB-VMM; *Black v. MDOC*, Case No. 09-14515-AC-VMM (Case Transferred);
*Black v. Michigan Parole Board*, Case No. 09-14774-AJT-DAS (Case Transferred); *Black v.
State of Michigan*, Case No. 10-11483-VAR-VMM; *Black v. Letson*, Case No. 10-12663-ADT-
MAR; *Black v. MDOC*, Case No. 10-12664-NGE-MJH; *Black v. Correction Officers*, Case No.
10-13368-SJM-CEB; *Black v. Parole Board*, Case No. 10-13859-DPH-VMM (Case
Transferred).
Also, plaintiff has cases in the Western District of Michigan:  *Black v. MDOC*, Case No. 09-
01076-JTN-ESC, terminated by Judge Neff's December 29, 2009 opinion; *Black v. Michigan
Parole Board, et al.*, Case No. 09-01151-RJJ-HWB, terminated by Judge Jonker's February 25,
2010 order and judgment; and *Black v. Parole Board*, Case No. 10-01050-RHB-JGS, which was
originally Case No. 10-13859 (E.D. Mich.) and is currently pending.

3), plaintiff filed an application to proceed in forma pauperis and a request for service by the U.S. Marshal (Doc. Ent. 4).

On April 21, 2010, Magistrate Judge Whalen entered an order waiving prepayment of the filing fee and directing payment of the initial partial filing fee and subsequent payments (Doc. Ent. 5) and an order directing service without prepayment of cost and authorizing the U.S. Marshal to collect costs after service is made (Doc. Ent. 6). That same day, the U.S. Marshal received one (1) copy of the complaint for service of process. Doc. Ent. 7.

The U.S. Marshal attempted service by mail on April 23, 2010. On April 27, 2010, a representative of the MDOC signed the Waiver of Service of Summons. The waiver was received by the U.S. Marshal on April 29, 2010 and was filed with this Court on May 6, 2010. As a result of the waiver being sent on April 23, 2010, defendant's answer was due on June 22, 2010. Doc. Ent. 8;[7] Fed. R. Civ. P. 12(a)(1)(A)(ii).[8]

## C. Defendant MDOC's June 23, 2010 Dispositive Motion

Currently before the Court is defendant MDOC's June 23, 2010 Rule 12(b)(6) motion to dismiss for failure to state a claim and Rule 56(b) motion for summary judgment for failure to exhaust administrative remedies. Doc. Ent. 11. Defendant MDOC argues that (I) "The Eleventh Amendment bars plaintiff's request for monetary damages from MDOC[;]" (II) "Plaintiff is unable to have his major misconduct overturned in this proceeding as he has failed to exhaust administrative remedies available to him before implementing the present suit[;]" and (III)

_____

[7]The MDOC is represented by Assistant Attorney General for the State of Michigan A. Peter Govorchin. Doc. Ent. 9.

[8]On May 20, 2010, Judge Friedman referred this case to me for all pretrial proceedings. Doc. Ent. 10.

6

"Plaintiff's request to be reclassified a Level I prisoner is improper in this proceeding as he has failed to take advantage of the remedies available to him in the prisoner grievance process before filing the present claim."  Doc. Ent. 11 at 8-15.

In sum, defendant MDOC's Rule 12(b)(6) motion is based upon plaintiff's allegedly "improper request for monetary relief against Defendant MDOC warrants dismissal under Fed. R. Civ. P. 12(b)(6)."  Its Rule 56(b) motion asserts that "[p]laintiff's failure to properly exhaust his administrative remedies for any claim against Defendant MDOC warrants summary judgment in favor of MDOC."  Doc. Ent. 11 at 15.

On June 28, 2010, I entered an order (Doc. Ent. 12) setting the deadline for a response to defendant's June 23, 2010 motion (Doc. Ent. 11) for July 28, 2010.  On July 9, 2010, plaintiff filed two (2) handwritten pages.  Doc. Ent. 13 at 1-2.[9]

**D.      Applicable Law**

**1.      Fed. R. Civ. P. 12(b)(6)**

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant MDOC requests entry of an order of dismissal in its favor.  Doc. Ent. 11 at 1.  Specifically, defendant MDOC claims, "Plaintiff's 42 U.S.C. §1983 claim fails to state against Defendant a claim on which relief can be granted, therefore warranting dismissal pursuant to Fed. R. Civ. P. 12(b)(6)."  Doc. Ent. 11 at 2 ¶ 7.

This rule provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion:  (6) failure to state a claim upon which relief can be granted[.]" Fed. R. Civ.

---

[9]Attached to this filing are a copy of my June 28, 2010 order (Doc. Ent. 13 at 3) and copies of the envelope plaintiff used to mail this document from Macomb Correctional Facility (MRF) in New Haven, Michigan(Doc. Ent. 13 at 4-5).

P. 12(b)(6).  "A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.  If a pleading sets out a claim for relief that does not require a responsive pleading, and opposing party may assert at trial any defense to that claim.  No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion."  Fed. R. Civ. P. 12(b).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d) ("Result of Presenting Matters Outside the Pleadings.").

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true[.]" *Bell Atlantic Corp.*, 550 U.S. at 555 (citations and quotations omitted).  It is not enough that "the pleadings [leave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  *Id*. at 561.  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id*. at 563.  "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.  Claims should be "nudged . . . across the line from conceivable to plausible" to avoid dismissal.  *Id.  See also*

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950-1951 (2009) ("respondent's complaint has not 'nudged [his] claims' of invidious discrimination 'across the line from conceivable to plausible.'") (quoting *Bell Atlantic Corp.*).

The reviewing court must construe the complaint in the light most favorable to plaintiff and must presume all factual allegations in the complaint as true. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The purpose of Rule 12(b)(6) is to give defendant the opportunity to test whether plaintiff is entitled to legal relief as a matter of law even if everything alleged in the complaint is true. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957), *overruled on other grounds by Bell Atlantic Corp.*, 550 U.S. at 554-563. A dismissal under Rule 12(b)(6) is generally disfavored by courts, as it is a dismissal on the merits. 2A JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 12.07 (2d ed. 1995).

## 2.     Fed. R. Civ. P. 56

Pursuant to Fed. R. Civ. P. 56(b), defendant MDOC also "moves the Court to enter its Order of Summary Judgment in favor of Defendant[.]" Doc. Ent. 11 at 1. Rule 56(b) provides that "[a] party against whom relief is sought may move, with or without supporting affidavits, for summary judgment on all or part of the claim."

Summary judgment, pursuant to Fed. R. Civ. P. 56, may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties.

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis,* 542 P.2d 867, 872 (Wyo. 1975) (quoting BLACK'S LAW DICTIONARY 881 (6th ed.1979)). "In evaluating a motion for summary judgment we view all evidence in the light most favorable to Plaintiff . . . and assess the proof to determine whether there is a genuine need for trial." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998) (citations omitted).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party discharges that burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine triable issue. Fed. R. Civ. P. 56(e); *Gregg*, 801 F.2d at 861.

"Although the nonmoving party 'may not rest upon the mere allegations or denials' of his pleading, Fed. R. Civ. P. 56(e), a verified complaint . . . satisfies the burden of the nonmovant to respond." *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999).[10] "[A] verified complaint . . . would have the same force and effect as an affidavit and would give rise to genuine issues of material fact." *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). However,

_____

[10]Plaintiff's complaint is signed under penalty of perjury. Doc. Ent. 1 at 3.

"[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). *See also Hamilton v. Roberts*, No. 97-1696, 1998 WL 639158, *5 (6th Cir. Sept. 10, 1998) (personal knowledge required); *Daniel v. Cox*, No. 96-5283, 1997 WL 234615, *2 (6th Cir. May 6, 1997) (conclusory assertions are insufficient for purposes of surviving summary judgment); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (citing *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969)) (cannot consider hearsay evidence).

"Demonstration of simply 'metaphysical doubt as to the material facts' is insufficient." *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992), citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 246-250 (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a). *Anderson*, 477 U.S. at 250. Consequently, a non-movant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

**E.      Analysis**

**1.      Plaintiff's complaint seeks three (3) forms of relief.**

In his prayer for relief, plaintiff requests (I) removal of points for his major misconduct

ticket(s), "after [his] evidence is proclaimed . . . to be [sufficient][;]" (II) approximately

$2,000.00 "to pay [filing] fee only or [a] mandate[d] disposition of [the] [filing] fee[;]" and (III)

reclassification to a lower level [Level I] "where [he is] around people of [his] own kind to avoid

hate crime on transgender."  Doc. Ent. 1 at 3.

Defendant's pending dispositive motion (Doc. Ent. 11) addresses each of these requests

for relief.

**2.**     **Defendant MDOC is entitled to dismissal of plaintiff's claim for approximately**
          **$2,000.00 "to pay [filing] fee only or [a] mandate[d] disposition of [the] [filing]**
          **fee[,]" because "[t]he Eleventh Amendment bars Plaintiff's request for [$2,000.00**
          **in] monetary damages from MDOC."**

In his second request for relief, plaintiff seeks approximately $2,000.00 "to pay [filing]

fee only or [a] mandate[d] disposition of [the] [filing] fee." Doc. Ent. 1 at 3.  It is defendant

MDOC's position that such a claim against the MDOC is barred by the Eleventh Amendment.

Doc. Ent. 11 at 6.

To begin, the Eleventh Amendment provides that "[t]he Judicial power of the United

States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State, or by Citizens or Subjects of any

Foreign State."  U.S. CONST. amend. XI.  Although the amendment expressly prohibits only suits

against states by citizens of other states, the Supreme Court has long held that the Eleventh

Amendment also bars suits by citizens of the state being sued.  *See Hans v. Louisiana*, 134 U.S.

1, 15 (1890); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) (citing

*Hans*); *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987)

(plurality opinion); *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363

(2001).[11]

"[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 100; *see also, Papasan v. Allain*, 478 U.S. 265, 276 (1986). *See also Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("[S]uit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [Michigan] has consented to the filing of such a suit."). Furthermore, as the Supreme Court made clear in *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will*, 491 U.S. at 66 (internal citations omitted). These exceptions do not apply here.[12]

---

[11] *See also Mumford v. Basinski*, 105 F.3d 264, 268 n.3 (6th Cir. 1997) ("This constitutional mandate has long been liberally construed by the Supreme Court to extend state immunity to federal suit to reach actions potentially initiated by any person against an unconsenting state, including causes inaugurated by a citizen or citizens of the subject state itself, as well as certain other classes of litigation.").

[12] "There are . . . three qualified exceptions to Eleventh Amendment immunity[.]" *Lawson v. Shelby County, TN*, 211 F.3d 331, 334 (6th Cir. 2000). "First, a state may waive the protection of the Amendment by consenting to the suit." *Lawson*, 211 F.3d at 334. "The state of Michigan has not consented to civil rights suits in the federal courts[.]" *McFadden v. Commissioner of Social Security*, 5 Fed.Appx. 388, 390 (6th Cir. 2001) (referencing *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir.1986)).

"The second exception to the Eleventh Amendment bar is that Congress, under certain provisions of the Constitution, may abrogate the sovereign immunity of the states through statute." *Lawson*, 211 F.3d at 334. "Congress has not chosen to abrogate the states' immunity for suits under §§ 1981, 1983, and 1985(3)[.]" *Hines v. Mississippi Dept. of Corrections*, No. 00-60143, 2000 WL 1741624, 3 (5th Cir. Nov. 14, 2000)).

"Under the third exception, a federal court may enjoin a 'state official' from violating federal law." *Lawson*, 211 F.3d at 335 (citing *Ex parte Young*, 209 U.S. 123 (1908)). To come

Here, plaintiff's March 26, 2010 complaint lists a single defendant - the MDOC - being sued in its personal and official capacities. Doc. Ent. 1 at 1.[13] Citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)[14] and *Rainey v. Wayne State University*, 26 F. Supp. 2d 973, 977 (E.D. Mich. 1998) (Steeh, J.),[15] defendant states that plaintiff cannot sue the MDOC "in its

---

within this exception, the relief sought by the plaintiff must be (1) against a state official; (2) for prospective injunctive relief; and (3) to remedy a continuing violation of federal law. *Strahan v. Coxe*, 127 F.3d 155 (1st Cir. 1997) (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996)). *See also Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002).

[13]To be sure, plaintiff indicates that he is suing more than one defendant and lists the position(s) of the defendants as RUO (Residential Unit Officer) and C/O (Corrections Officer). Doc. Ent. 1 at 1. Perhaps plaintiff intended to name as defendants the individual(s) who issued the allegedly false major misconduct reports. However, the form prisoner civil rights complaint which plaintiff filed specifically provides that if plaintiff is suing more than one defendant, "*any additional defendants to this action should be listed on a separate . . . sheet of paper and securely attached to the back of this complaint. You must provide their names, positions, current addresses and the capacity (personal, official or both) in which you are suing them.*" Doc. Ent. 1 at 1. There is no such attachment to plaintiff's complaint. Yet, the captions to plaintiff's applications to proceed without prepayment of fees suggest more than one defendant. Doc. Entries 2 and 4.
My recommendation with respect to plaintiff's claim for monetary relief would be altered if plaintiff had named individual defendants in their personal capacities, because the Eleventh Amendment permits an action for damages against defendant(s) in their personal capacities. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("*Will* itself makes clear that the distinction between official-capacity suits and personal-capacity suits is more than 'a mere pleading device.' State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term 'person.'") (internal citations omitted), *Young ex rel. Estate of Young v. Martin*, 51 Fed.Appx. 509, 512-513 (6th Cir. 2002) ("Here, Plaintiff sought money damages in his complaint. Because state officials cannot be sued for money damages in their official capacities, the request for money damages indicates a personal capacity suit. Therefore, we believe that Defendant Martin clearly was on notice that Plaintiff intended to maintain a personal capacity suit against him.") (internal citation omitted).

[14]"[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71.

[15]*Rainey v. Wayne State University*, 26 F. Supp. 2d 973, 977 (E.D. Mich. 1998) (Steeh, J.) ("The Eleventh Amendment presents no bar to suit against a defendant in his individual capacity for

individual capacity because a state agency is not an individual[,]" and points out that suing the MDOC in its official capacity for monetary damages would result in a payment from Michigan's treasury.  Doc. Ent. 11 at 8-9.

Also, citing *Pennhurst* and *Will*, defendant MDOC claims that, "[i]n the present case, MDOC has not waived its immunity."  Furthermore, citing *Quern v Jordan*, 440 U.S. 332, 341 (1979)[16] and *Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986),[17] defendant argues that "the Eleventh Amendment of the United States Constitution bars [p]laintiff's request for monetary relief."  Doc. Ent. 11 at 9.

In the end, defendant MDOC argues that, in this case, "monetary relief is unable to be granted under any set of facts alleging deprivation of a constitutional right against a state agency in its official capacity."  To do so, defendant MDOC argues, "[p]laintiff must show he is suing [the] MDOC in its individual capacity, which is impossible."  Doc. Ent. 11 at 9.

In accordance with the foregoing case law, the Court should conclude that plaintiff's

_____

monetary damages.  The reasoning for this rule is that technically a suit against an individual will not require that any monies be paid from the state's treasury. Accordingly, to the extent that Williams has been sued in his individual capacity for monetary damages, the court retains jurisdiction over these claims. As a corollary to this finding, suit against Williams, in his official capacity, would require payment from the state's treasury and is barred by Eleventh Amendment immunity.") (internal citations omitted).

[16]*Quern*, 440 U.S. at 341 ("neither the reasoning of *Monell* or of our Eleventh Amendment cases subsequent to *Edelman*, nor the additional legislative history or arguments set forth in Mr. Justice BRENNAN's concurring opinion, justify a conclusion different from that which we reached in *Edelman*.").

[17]*Berndt*, 796 F.2d at 881 ("the Eleventh Amendment bars suits in federal court against a state unless the state expressly consents to suit.   This sovereign immunity also extends to any suit brought by a private party where the payment of liability must be made from public funds in the state treasury, regardless of the actual party being sued.  The Court also held in *Edelman* and reaffirmed in subsequent opinions that Congress did not intend to abrogate a state's sovereign immunity in suits for monetary liability with the promulgation of § 1983.") (internal and external citations omitted).

claim for monetary damages is barred as to the extent it is sought from defendant MDOC. *See Brown v. Michigan*, No. 2:09-12975, 2009 WL 2750949, 2 (E.D. Mich. Aug. 26, 2009) (Friedman, J.) ("The complaint must also be dismissed against the Michigan Department of Corrections, because it, too, is not a 'person' subject to suit under 42 U.S.C. § 1983, and thus, the Eleventh Amendment would bar plaintiff's civil rights action against the Michigan Department of Corrections for monetary damages for the alleged exposure to second-hand tobacco smoke.") (citing *Rodgers v. Michigan Dept. of Corrections*, 29 Fed. Appx. 259, 260 (6th Cir.2002) and *Davis v. Michigan Dept. of Corrections*, 746 F.Supp. 662, 666 (E.D. Mich.1990)).

**3.      Defendant MDOC is not entitled to summary judgment with respect to plaintiff's claim to have his major misconduct points removed.**

**a.**      In his first request for relief, plaintiff seeks removal of points for his major misconduct ticket(s), "after [his] evidence is proclaimed . . . to be [sufficient]." Doc. Ent. 1 at 3. Plaintiff's major misconduct reports are dated June 24, 2009 (Doc. Ent. 1 at 4) and apparently September 2009 (Doc. Ent. 1 at 13-14). It is defendant MDOC's position that 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act (PLRA) and Mich. Comp. Laws §§ 791.251-791.256 ("Hearings Division") control plaintiff's 42 U.S.C. § 1983 request. Doc. Ent. 11 at 6.

**b.**      42 U.S.C. § 1997e governs suits by prisoners. With respect to the applicability of administrative remedies, the statute provides, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The plain language of the statute makes exhaustion a precondition to filing an action in federal court[.] The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d

641, 645 (6th Cir. 1999) (citations omitted).

It is defendant MDOC's position that plaintiff "is unable to have his major misconduct overturned in this proceeding as he has failed to exhaust administrative remedies available to him before implementing the present suit." Doc. Ent. 11 at 10-12. Defendant MDOC argues that "even accepting Plaintiff's allegations as true, [h]e is unable to prove his claim as he has not satisfied all of the statutory requirements necessary to establish a prima facie case under 42 U.S.C. § 1983." Doc. Ent. 11 at 10. Citing 42 U.S.C. § 1997e(a) and *Freeman*, defendant MDOC notes plaintiff's allegations in opposition to the June 24, 2009 major misconduct for substance abuse based upon a refusal to take a drug test (Doc. Ent. 1 at 4 [Major Misconduct Report], 6-7 [Prisoner Stationery]). Doc. Ent. 11 at 10-11. Then, defendant MDOC cites Mich. Comp. Laws §§ 791.251-791.256 and points to plaintiff's July 14, 2009 request for rehearing which was disapproved by Hearings Administrator Stapleton on or about August 7, 2009 (Doc. Ent. 11-7). Citing Mich. Comp. Laws § 791.255(2),[18] defendant contends that plaintiff did not "file a petition for judicial review." Therefore, plaintiff claims, "even if the allegations in Plaintiff's Complaint are true, Plaintiff has failed to exhaust all state administrative remedies available to him before filing." Defendant contends that "Plaintiff is unable to rebut this finding as all filed petitions for judicial review are recorded by the MDOC." Doc. Ent. 11 at 11.

According to the June 22, 2010 affidavit of Richard B. Stapleton, "I have caused a search of the [MDOC] prisoner grievance data base and there are no prisoner grievances filed by

---

[18]"Within 60 days after the date of delivery or mailing of notice of the decision on the motion or application for the rehearing, if the motion or application is denied or within 60 days after the decision of the department or hearing officer on the rehearing, a prisoner aggrieved by a final decision or order may file an application for direct review in the circuit court in the county where the petitioner resides or in the circuit court for Ingham county." Mich. Comp. Laws § 791.255(2).

Prisoner Ivan Black #497061 in the past three years. Furthermore, during this time frame, there are no grievances against staff he alleges wrote misconducts due to retaliation." Doc. Ent. 11-9 ¶ 14. Stapleton further attests that Black "could have filed a prisoner grievance in this case over alleged retaliatory misconducts but he did not do so." Doc. Ent. 11-9 ¶ 16.

**c.** However, in his July 9, 2010 response, plaintiff mentions that he is "done with th[r]ee appeal[s] [and is] awaiting . . . special law suit forms[.]"[19] Then, plaintiff claims he filed Step I and Step II grievances in ICF 0906 1483 28B.[20] If plaintiff's assertion about grievance identifier ICF 0906 1483 28B is correct, it means he filed a grievance regarding Ionia Maximum Correctional Facility (ICF) in June of 2009, which is consistent with his claims that the grievance is dated June 24, 2009 and was completed directly after his visit to health care. Doc.

_____

[19]It is not clear to which cases plaintiff is referring. At least with respect to plaintiff's five (5) other Eastern District of Michigan cases, ***Black v. MDOC*, Case No. 08-11197-PDB-VMM**, was terminated on April 14, 2008 by Judge Borman's order of summary dismissal which was affirmed on February 3, 2009 by the Sixth Circuit. ***Black v. State of Michigan*, Case No. 10-11483-VAR-VMM**, was terminated on June 11, 2010 by Judge Roberts order dismissing the case without prejudice. ***Black v. Letson*, Case No. 10-12663-ADT-MAR**, is still pending. ***Black v. MDOC*, Case No. 10-12664-NGE-MJH**, was terminated on July 15, 2010 by Judge Edmunds's order dismissing the case; however, plaintiff filed a notice of appeal on July 29, 2010 but was notified of a failure to comply with the appeal filing fee requirement. Finally, ***Black v. Correction Officers***, Case No. 10-13368-SJM-CEB was terminated on September 9, 2010 by Judge Murphy's opinion and order of summary dismissal.
With respect to plaintiff's W.D. Mich. cases, plaintiff notes in his complaint that 09-1151 is now in the United States Supreme Court (there is no such indication on the W.D. Mich. docket) and that 09-1076 is now in the Michigan Court of Appeals.

[20]Also, plaintiff requests that his family be called. Specifically, he lists his grandparents, Mr. & Mrs. Black, and 216-561-7584. Doc. Ent. 13 at 1; *see also* www.whitepages.com (Attributing this phone number to Louis and Frances Black of Cleveland, Ohio). Furthermore, plaintiff sets forth a proposed settlement, including (1) reclassifying him to Level I or (2) releasing him with $25,000 for car, food, and rent; and (3) awarding $1,500 per month if he remains imprisoned. Additionally, he signs the filing, noting that he is in pain. Doc. Ent. 13 at 1.
Finally, Black alleges that there is a blind man named Franklin who is being treated inhumanely, and plaintiff requests that Franklin be placed in a nursing home or other humane location, such as Macomb Correctional Facility (MRF) in New Haven, Michigan. Doc. Ent. 13 at 2.

Ent. 13 at 1.[21]

To be sure, MDOC PD 03.02.130 ("Prisoner/Parolee Grievances"), effective July 9,

2007, provides generally that "[c]omplaints filed by prisoners regarding grievable issues as

defined in this policy serve to **exhaust** a prisoner's **administrative remedies** only when filed as a

grievance through all three steps of the grievances process in compliance with this policy."

MDOC PD 03.02.130 ¶ B (emphasis added). However, the United States Supreme Court has

stated that "failure to exhaust is an affirmative defense under the PLRA," and that "inmates are

not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*,

549 U.S. 199, 216 (2007).

However, albeit in an unverified response, plaintiff has put forth an identifier number for

a grievance filed in June 2009, and he claims he has one copy of the Step I grievance form. Doc.

Ent. 13 at 1. If, in fact, this grievance belongs to plaintiff, it directly contradicts Stapleton's June

22, 2010 attestation that "there are no prisoner grievances filed by Prisoner Ivan Black #497061

in the past three years." Doc. Ent. 11-9 ¶ 14. Stapleton's affidavit is not accompanied by a Step

I, Step II or Step III Grievance Inquiry; in other words, defendant has not provided evidence in

the form of a printout of plaintiff's Step I, Step II and/or Step III grievances for the period

---

[21]I note that there are two major misconduct reports attached to plaintiff's complaint - one dated
June 24, 2009 (Doc. Ent. 1 at 4) and another apparently issued in September 2009 (Doc. Ent. 1 at
13-14). Plaintiff claims the misconduct tickets are false (Doc. Ent. 1 at 3), and the stationery
attached to plaintiff's complaint explains what he feels is false about the June 24, 2009 June 24,
2009 ticket (Doc. Ent. 1 at 6-7). However, the September 2009 major misconduct is illegible
(Doc. Ent. 1 at 14), and it may be that the attachment of the September 2009 misconduct is
meant to justify his assertion that he only received one major misconduct in September 2009
(Doc. Ent. 1 at 11). Therefore, this report and recommendation assumes that plaintiff's request
to have "all [of] his major misconduct point[s] removed[,]" Doc. Ent. 1 at 3, is based upon the
points he received as a result of the June 24, 2009 major misconduct for Substance Abuse (Doc.
Ent. 1 at 5).

relevant to this complaint.

Therefore, at this time, the Court cannot conclude, as defendant MDOC argues, that it is entitled to summary judgment with respect to "Plaintiff's request to have his guilty finding on the major misconduct of Substance Abuse (Drug Test Refusal) overturned[,]" Doc. Ent. 11 at 3, because there is a material dispute as to whether this claim was exhausted.[22]

**4.    Defendant MDOC is entitled to summary judgment with respect to plaintiff's request to be reclassified to a lower management level.**

**a.**    In his third request for relief, plaintiff seeks reclassification to a lower level [Level I] "where [he is] around people of [his] own kind to avoid hate crime on transgender." Doc. Ent. 1 at 3. Based upon the record, it appears that Security Classification Screen Reviews regarding plaintiff were performed on September 1, 2009; on September 23, 2009 by James Downing (ICF); on February 8, 2010; and on May 13, 2010 by David W. Dulworth (ARF), which concluded that plaintiff's True Security Level was V and his Actual Placement Level was IV. Doc. Ent. 1 at 12 [Doc. Ent. 11-12], Doc. Ent. 11-13.

**b.**    It is defendant MDOC's position that 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006);[23] and MDOC Policy Directives 03.02.130 ("Prisoner/Parolee Grievances") and 05.01.130 ("Prisoner Security Classification") control plaintiff's request for reclassification.

---

[22]The parties are granted leave to present the Court with further documentation of plaintiff's grievances, such as copies of the grievance forms or copies of MDOC Grievance Inquiries, in objection to this report and recommendation.

[23]"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. "A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction, and under respondent's interpretation of the PLRA noncompliance carries no significant sanction." *Id*. at 95.

Doc. Ent. 11 at 6.  It is defendant MDOC's position that "Plaintiff's request to be reclassified a

Level I prisoner is improper in this proceeding as he has failed to take advantage of the remedies

available to him in the prisoner grievance process before filing the present claim."  Doc. Ent. 11

at 12-15.

Citing *Woodford*, MDOC PD 03.02.130[24] and MDOC PD 05.01.130,[25] defendant MDOC

claims that "Plaintiff had the opportunity to file a grievance for alleged violation of PD

05.01.130."  Then, as noted above, defendant cites the June 22, 2010 affidavit of Richard B.

Stapleton, which states in part, "there are no prisoner grievances filed by Prisoner Ivan Black

#497061 in the past three years.  Furthermore, during this time frame, there are no grievances

against staff he alleges wrote misconducts due to retaliation[,]" Doc. Ent. 11-9 ¶ 14.  Defendant

MDOC cites the Stapleton affidavit in support of the MDOC's claim that plaintiff "has not filed

a Step III grievance appeal in the past three years."  Doc. Ent. 11 at 12.

Citing several portions of MDOC PD 05.01.130 and a portion of MDOC PD 04.06.184

(Gender Identity Disorders in Prisoners),[26] defendant MDOC contends that "the only time a

prisoner is entitled to review of security classification is if any of the events described in PD

---

[24]A portion of MDOC PD 03.02.130, effective 07/09/2007, is attached to defendant's motion.
Doc. Ent. 11-8.

[25]MDOC PD 05.01.130, effective 12/31/2007, is attached to defendant's motion.  Doc. Ent. 11-
10.

[26]MDOC PD 04.06.184 contains provisions on "Individual Management Plan and Placement,"
¶¶ F-J.  In part, this policy provides that "[i]f the medical/mental health evaluations support a
diagnosis of gender identity disorder or transsexualism, the Medical Director shall formulate a
written individual management plan.  The plan shall reflect that consideration has been given to
all of the following: . . . Placement and housing (generally single-occupancy cell)[,]" and
"characteristics of the prisoner, including size, tendency toward violence or predatory behavior,
etc., which are relevant to placement."  MDOC PD 04.06.184(F)(1), (F)(4).  *See also* Doc. Ent.
11-11 (MDOC PD 04.06.184, effective 04/19/1993).

05.01.130(J) occur." Doc. Ent. 11 at 13. Paragraph J is found in the section of MDOC PD

05.01.130 dedicated to "Security Classification Review." According to defendant, the only

events which apply in this case are (1) "[i]t has been twelve months since the prior screening[,]"

and (2) "[t]he prisoner is being transferred to a different CFA facility and it has been at least 60

calendar days since the prior screening or the prisoner has incurred a major misconduct since the

prior screening. This does not apply to temporary transfers for medical, psychiatric, or other

treatment unrelated to security needs." Doc. Ent. 11 at 13-14; MDOC PD 05.01.130(J)(1),

(J)(2).[27]

Referring to plaintiff's September 23, 2009 ICF Security Classification Screen - Review

(Doc. Ent. 11-12), defendant contends that "[g]enerally, Plaintiff would not be entitled to another

rescreening until September 23, 2010." However, defendant MDOC notes that plaintiff was

transferred from ICF and another security level rescreening was performed on May 13, 2010 at

ARF (Doc. 11-13).[28] According to defendant, plaintiff's "true security level has not changed

since his time spent at ICF, but he has received more major misconducts and the amount of

---

[27]To be sure, I note that the same paragraph states that a Security Classification Review may be
conducted when "[s]taff have reason to believe the prisoner's security level would change[,]" or
when "[a]n error is identified in a prior security classification screen as a result of incorrect
information or computation." MDOC PD 05.01.130(J)(3), (J)(7).

[28]MDOC policy provides that a prisoner shall be rescreened for security classification if "[t]he
prisoner is being transferred to a different CFA facility and it has been at least 60 calendar days
since the prior screening or the prisoner has incurred a major misconduct since the prior
screening. This does not apply to temporary transfers for medical, psychiatric, or other treatment
unrelated to security needs." MDOC 05.01.130 ¶ J(2), effective 12/31/07 (Doc. Ent. 11-10).
Defendant MDOC claims that plaintiff was incarcerated at MRF at the time it filed its June 23,
2010 motion brief but also states that the May 13, 2010 screening at ARF was "conducted within
two months of [plaintiff's] transfer to MRF." Doc. Ent. 11 at 14.

points accounted for in his management level determination has gone up."[29]  Also, defendant

notes, plaintiff's "actual placement level is still level 4."  Doc. Ent. 11 at 14.

Noting that the May 13, 2010 security classification review was recently conducted,

defendant states, "[i]f Plaintiff believes the rescreening was conducted in violation of MDOC

policy, or if Plaintiff believes the conditions of his confinement are unsatisfactory, his recourse

is the prisoner grievance process."  Doc. Ent. 11 at 14.  According to defendant, plaintiff cannot

rebut the assertion that he "has not filed a Step III grievance appeal in the past three years[,]"

Doc. Ent. 11 at 14-15, because "all filed Step III grievances are recorded by the MDOC."  Doc.

Ent. 11 at 15.

**c.**     In his July 9, 2010 filing, plaintiff repeats his request to be reclassified to Level I.  Doc.

Ent. 13 at 1.  However, defendant MDOC is entitled to summary judgment regarding plaintiff's

March 26, 2010 request to be reclassified to a lower level (Level I).

First, MDOC PD 05.01.130 provides generally that "[w]hile there is no right to

placement at a particular security level, prisoners shall be classified according to management

and confinement requirements necessary for protection of the general public, prevention of

escape, maintenance of control and order, and the safety of staff and prisoners."  MDOC PD

05.01.130, effective 12/31/07, ¶ A.  Therefore, MDOC PD 05.01.130 does not give plaintiff the

right "to placement at a particular security level."  Doc. Ent. 11 at 13.

Second, plaintiff has been screened since the filing of his complaint.  By way of

background, plaintiff's February 8, 2010 screening was followed by the March 26, 2010 filing of

---

[29]The May 13, 2010 Security Classification Screen - Review indicates that, since February 8,
2010, plaintiff received three (3) major misconducts, two (2) of which were non-bondable or
resulted in felony conviction.  Doc. Ent. 11-13.

plaintiff's complaint (Doc. Ent. 1) - at which time he was incarcerated at Gus Harrison Correctional Facility (ARF) - and a review was performed at ARF on May 13, 2010 (Doc. Ent. 11-13) - a date after the filing of the complaint. Therefore, if plaintiff was contesting the February 8, 2010 screening, it has been superceded by the May 13, 2010 screening.

Third, if plaintiff was contesting the computation of the September 23, 2009 review performed at ICF, as evidenced by the prisoner stationery attached to his March 26, 2010 complaint (Doc. Ent. 1 at 11-12), MDOC PD 05.01.130 provides that "[i]f the prisoner believes that the security classification is the result of incorrect information or computation on the screening form, the prisoner may file a grievance as set forth in PD 03.02.130 "Prisoner/Parolee Grievances". MDOC PD 05.01.130, effective Dec. 31, 2007, ¶ E. Distinct from plaintiff's claim with respect to grievance identifier ICF-09-06-01483-28b, plaintiff's response makes no claim that he filed a grievance with respect to either the September 23, 2009 screening - which apparently resulted from a September 2009 major misconduct for Threatening Behavior (Doc. Ent. 1 at 12-13) - or that he filed a grievance with respect to the subsequent screenings dated February 8, 2010 and May 13, 2010 (Doc. Ent. 11-13).

In the end, the Court should agree with defendant MDOC that, if plaintiff is dissatisfied with his "Security Classification Screen - Review", "his recourse is the prisoner grievance process." Doc. Ent. 11 at 14. There being no evidence that any such grievance was filed, the Court should conclude that defendant MDOC's is entitled to summary judgment with respect to plaintiff's request to be reclassified to a lower management level.

**5.     Defendant MDOC's request for costs and attorney fees is premature.**

Defendant MDOC requests an assessment of costs and attorney fees in its favor. Doc. Ent. 11 at 3. The request is premature. Should the Court enter judgment in favor of defendant, it

may present a bill of costs to the clerk of this Court pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1). If defendant seeks attorney fees pursuant to 42 U.S.C. § 1988, it should follow the procedure set forth in Fed. R. Civ. P. 54(d)(2).

## III. **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 12/16/10

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record and  by
electronic means or U.S. Mail on December 16, 2010.

s/Eddrey Butts
Case Manager