UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IVAN BLACK (#497061),

                              CASE NO. 2:10-CV-11211
            Plaintiff,        JUDGE BERNARD A. FRIEDMAN
                              MAGISTRATE JUDGE PAUL J. KOMIVES

v.


MICHIGAN DEPARTMENT OF
CORRECTIONS,

            Defendant,
_____/

## REPORT AND RECOMMENDATION REGARDING DEFENDANT MDOC'S SECOND MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 18)

Table of Contents

I.      RECOMMENDATION ................................................................................................ 2

II.     REPORT ................................................................................................................... 2
        A.      Background ................................................................................................ 2
        B.      Plaintiff's March 26, 2010 Complaint Seeks Three Forms of Relief. ............ 6
        C.      The Court's February 15, 2011 order dismissed or granted summary judgment as to plaintiff's second (monetary damages) and third (reclassification to a lower management level) claims for relief. ................................................................................................ 8
        D.      The Background to the Court's February 15, 2011 Conclusion that Defendant MDOC was not Entitled to Summary Judgment with Respect to Plaintiff's First Claim for Relief (Regarding Plaintiff's Misconduct Points). ................................................................................ 10
        E.      Defendant MDOC's August 8, 2011 (Second) Dispositive Motion Argues that Plaintiff Did Not Properly Exhaust His Administrative Remedies. ................................................................................ 12
        F.      Fed. R. Civ. P. 56 ...................................................................................... 13
        G.      The Court Should Not Dismiss this Matter. ................................................ 15
                1.      The Court should conclude that plaintiff did not exhaust his administrative remedies to the extent his first claim for relief was grievable and is encompassed in ICF-09-06-01483-28b. ................................................................................................ 15
                2.      As to the non-grievable portion of plaintiff's first claim for relief, the Court should conclude that defendant MDOC is not entitled to summary judgment on the basis that plaintiff has not exhausted his administrative remedies. ................................................. 21

III.    NOTICE TO PARTIES REGARDING OBJECTIONS ............................................. 24

1

I.    **RECOMMENDATION:**  The Court should grant in part defendant MDOC's August 8,

2011 second motion for summary judgment (Doc. Ent. 18).  However, because this

recommendation does not encompasses the entirety of plaintiff's sole claim for relief to have

survived the Court's February 15, 2011 order, the Court should not dismiss this matter.

II.    **REPORT:**

A.    **Background**

On February 7, 2007, Ivan Ray Black was sentenced from one (1) to eight (8) years for a

December 12, 2006 violation of Mich. Comp. Laws §§ 750.197c / 769.11 (Assault of Prison

Employee).  *See* www.michigan.gov/corrections; Doc. Ent. 11-2 (Plaintiff's MDOC OTIS

Sheet); Doc. Ent. 18-2 (same); Case No. 2007-212492-FH (Oakland County).

According to the MDOC, Black was transferred to the **Ionia Maximum Correctional**

**Facility (ICF)** on June 24, 2009.  Doc. Ent. 18 at 5.  That day, Black received a major

misconduct report at ICF from P. Pline for substance abuse (drug test refusal).  Pline described

the violation as follows:

> At 1128 hours, Prisoner Black 497061 arrived at the control center where he was
> told he ha[d] to supply a urine sample for a random drug test.  At that time he was
> given [a] cup and water as he couldn't supply one without water.  At 1231 hours,
> I told Black his hour was up and he need[ed] to provide a sample.  He stated[,]
> "I'm GID [Gender Identity Disorder] and I can't provide a sample for a man[.]"
> Black did not supply [m]e with a specimen.

Black was placed on bond pending hearing.  The report was reviewed by Patterson on June 25,

2009.  Doc. Ent. 1 at 4; Doc. Ent. 11-3; Doc. Ent. 18-3.  It appears that Black provided a two-

page, handwritten statement regarding this charge.  *See* Doc. Ent. 1 at 6-7.[1]

---

[1]Therein, Black alleges that the charge of Substance Abuse under
MDOC PD 03.03.105 (Prisoner Discipline), *see* Attachment A (Class
I Misconducts) does not require a urine sample within one hour;

A hearing took place on July 8, 2009, at which time Hearing Officer Jackson noted:

Prisoner present.  States he had (GID) and could not provide a sample for the officer.  States if they really thought he was doing drugs they would have kept him up here until he did give a sample.  Also read out loud prisoners own written statement and provides two health care requests for a 'bathroom' detail with request for health services memo only indicating that was his complaint.  Prisoner states he was not given a 'bathroom' detail.  Relist to ask health care to review prisoners record and give opinion as to whether prisoner should be able to provide a urine sample for the purpose of drug testing within the hour time limit.  To be heard on or before [July 17, 2009].  FJ (7/8/09)

Then, on July 14, 2009, Hearing Officer Jackson noted:

Prisoner present.  Hearing reconvened [July 14, 2009] and report read along with entire hearing record.  Also read out loud statement of RN LeBarre indicating prisoners [GID] should not have any impact on his ability to urinate and there is no reason he should not have been able to provide the urine sample.

---

alleges that he has Gender Identity Disorder (GID), citing MDOC PD 04.06.184 ("Gender Identity Disorders in Prisoners"); claims he gave a urine sample anyway and questions why he still received a major misconduct; claims he informed the Corrections Officer that he had GID and could not supply a urine sample at that time; and claims that, while he and the officer were in the restroom, the officer made a "sexual comment about drinking [Black's] urine."  Doc. Ent. 1 at 6.

He also accuses people of stealing funds from his account (sent to plaintiff by his friends and family), as well as stealing his mail, pictures, money and other property.  Furthermore, Black claims, when he found out that staff was using his money "for sexual favor with other prisoners[,]" plaintiff "wrote several grievances" and "was [subjected to] hate crimes on [the basis of his] transgender[ism]."  Doc. Ent. 1 at 7.  *See also* Doc. Ent. 11-4, Doc. Ent. 11-5.

Additionally, plaintiff Black noted that he was shot in the groin, which prevents him from urinating, and that staff knows his medical history.  According to Black, the points were not removed when he showed them certain evidence.  Doc. Ent. 1 at 7.  Attached to this statement were November 2004 records from Detroit Receiving Hospital which indicate that Black had a past medical history of "[a]sthma as well as gunshot wound to the right groin."  Doc. Ent. 1 at 8-10.  *See also* Doc. Entries 11-4, 11-5.

3

Hearing Officer Jackson found Black guilty of substance abuse (043).[2]  Black received three

days in top lock (from July 16, 2009 to July 19, 2009).  Doc. Ent. 1 at 5; Doc. Ent. 11-6; Doc.

Ent. 18-4.  Black requested a rehearing,[3] but Hearings Administrator Stapleton disapproved the

request on or about August 7, 2009.  Doc. Ent. 11-7.

Apparently in September 2009, Black received another major misconduct report; this

time, his status pending the hearing was "Non-Bond List."  Doc. Ent. 1 at 14.  On September 21,

2009, a hearing was conducted on Black's misconduct charge of threatening behavior (012).

Doc. Ent. 1 at 13.

Two days later, on September 23, 2009, Black was reclassified to "Level V Transition

General Population."  The Security Reclassification Notice from ICF indicates that "[f]urther

misconducts may result in reclassification to Administrative Segregation."  Doc. Ent. 1 at 13.

That same day, James Downing conducted a review of Black's Security Classification Screen

(ICF).  Downing noted that Black had a Confinement Level of I.  Downing further noted that

Black's management score at the September 1, 2009 screening was 24, but four (4) points were

added, making Black's New Management Level V (28 points).[4]  Erica Huss approved Black's

---

[2]There are several iterations of a misconduct for substance abuse, such as 034 (Alcohol), 043 (drug test refusal), etc.  *See* MDOC PD 03.03.105A.

[3]In his request for rehearing, Black explained, "I never said that the [GID] had anything to do with me [using] the 'restroom[.]'" Furthermore, he stated, "it's very offensive to have [an] officer watch me use the restroom."  Also, Black claimed, the issue was frivolous, because "[i]f they wanted [him] to urinate [to test for drugs][,] [he] would have been locked up."  Doc. Ent. 11-7.

[4]This increase of four (4) points was based on two (2) acts "resulting in separate major misconducts[,]" – *each of which resulted in an assessment of one point* – one of which was "non-bondable or resulted in felony conviction[,]" – *for which Ivan*

True Security Level as V and his Actual Placement Level as IV for "[a]ccess to medical needs."
Doc. Ent. 1 at 12; Doc. Ent. 11-12.

On November 18, 2009, Black was classified to administrative segregation for "serious threat to physical safety of others."[5]  On or about February 25, 2010, approval was sought to reclassify Black from Administrative Segregation to General Population so that Black could be discharged from acute care to RTP (Residential Treatment Program).  Warden Kenneth A. Romanowski of **Woodland Center Correctional Facility (WCC)** in Whitmore Lake, Michigan approved the request.  Doc. Ent. 1 at 15.

On May 13, 2010, David W. Dulworth conducted a review of Black's Security Classification Screen (**Gus Harrison Correctional Facility (ARF)**).  Based on a New Management Level of "35," Dulworth described Black's True Security Level as V.  Based upon "[a]ccess to medical/mental health treatment[,]" Lee McRoberts approved an Actual Placement Level of IV. Doc. Ent. 11-13.

**B.      Plaintiff's March 26, 2010 Complaint[6] Seeks Three Forms of Relief.**

---

***was assessed two points***.  Doc. Ent. 1 at 12.
Attached to Black's March 26, 2010 complaint is undated prisoner stationery which discusses the change in his management level from 24 points to 28 points.  Therein, Black claims that he "only caught 1 misconduct [Threatening Behavior] for the month of September [2009][,]" therefore, his total should be 27 points. According to Black, Downing agreed and stated "if [I have] to fix the [purposeful] mishap [I will]."  Doc. Ent. 1 at 11.

[5]The description of this reason notes "MMR's [Major Misconduct Reports] Threatening Behavior, DDO [Disobeying a Direct Order], Assault and Battery-staff victim, Threatening Behavior[.]" Doc. Ent. 1 at 15.

[6]**In addition to the instant case, plaintiff has filed several other cases in the Eastern District of Michigan:** *Black v. MDOC*, Case No. 08-11197-PDB-VMM; *Black v. MDOC*, Case No. 09-14515-AC-VMM (Case Transferred); *Black v. Michigan Parole Board*, Case No.

On March 26, 2010, while incarcerated at ARF, plaintiff filed a pro se prisoner civil

rights complaint pursuant to 42 U.S.C. § 1983 against the Michigan Department of Corrections

(MDOC).[7]  Plaintiff's complaint states as follows: "[F]alse charges[.] Staff seems to make up

---

09-14774-AJT-DAS (Case Transferred); *Black v. State of Michigan*,
Case No. 10-11483-VAR-VMM; *Black v. Letson*, Case No. 10-12663-
ADT-MAR; *Black v. MDOC*, Case No. 10-12664-NGE-MJH; *Black v.
Correction Officers*, Case No. 10-13368-SJM-CEB; *Black v. Parole
Board*, Case No. 10-13859-DPH-VMM (Case Transferred); *Black v.
Parole Board*, 2:11-cv-14158-PDB-LJM; *Black v. Sosnick*, 2:11-cv-
13271-BAF-MAR; *Black v. Federal Bureau of Investigation*, 2:11-cv-
14157-AC-MKM; Black v. County of Oakland, 2:11-cv-13769-RHC-MKM;
*Black v. Detroit Police*, 2:11-cv-13784-LPZ-MAR; *Black v. Michigan
Department of Corrections*, 5:11-cv-14156-JCO-PJK.
**Three of these cases were transferred to the Western District of
Michigan:**   *Black v. MDOC*, Case No. 09-01076-JTN-ESC, which was
originally Case No. 09-14515 (E.D. Mich) and was terminated by
Judge Neff's December 29, 2009 opinion; *Black v. Michigan Parole
Board*, *et al.*, Case No. 09-01151-RJJ-HWB, which was originally
Case No. 09-14774 (E.D. Mich.) and was terminated by Judge
Jonker's February 25, 2010 order and judgment; and *Black v.
Parole Board*, Case No. 10-01050-RHB-JGS, which was originally
Case No. 10-13859 (E.D. Mich.) and was terminated by Judge Bell's
December 23, 2010 order and judgment.

[7]As I discussed in my December 16, 2010 report and recommendation
(Doc. Ent. 16 at 14 n.13), plaintiff's pro se form prisoner civil
rights complaint indicates that (1) plaintiff is suing in
personal and official capacities, (2) he is suing more than one
defendant, and (3) plaintiff lists the position(s) of defendant
MDOC as RUO (Residential Unit Officer) and C/O (Corrections
Officer). Doc. Ent. 1 at 1.
     Perhaps plaintiff intended to name as defendants the
individual(s) who issued the allegedly false major misconduct
reports.  However, the form prisoner civil rights complaint which
plaintiff filed specifically provides that if plaintiff is suing
more than one defendant, "any additional defendants to this
action should be listed on a separate . . . sheet of paper and
securely attached to the back of this complaint. You must provide
their names, positions, current addresses and the capacity
(personal, official or both) in which you are suing them."  Doc.
Ent. 1 at 1.  There is no such attachment to plaintiff's
complaint.
     Nor do plaintiff's other filings shed light on this
question.  For example, the captions to plaintiff's applications
to proceed without prepayment of fees suggest, but do not
identify, more than one defendant (Doc. Entries 2 and 4).
Furthermore, plaintiff's July 9, 2010 response does not provide

[their] own rules[.] I was over 6 month[s] ticket free when staff who are ex-convicts, [felons], and criminal[s] who should not be in charge of young (myself) inmates.  They press . . . us for sexual favors and when [I do not] give it to them they write false claims[.] [Everything] I state can be backed up 100% by Policy Directive[s][.] I [am claiming] false major misconducts[.]" Also, it appears plaintiff is alleging that "staff is using young people . . . to profit other off the computer[,]" and staff is "jealous of Black History Month[.]" Furthermore, plaintiff claims, he is a "victim of [his family's] honorable, good, honest works."  Doc. Ent. 1 at 3.

Plaintiff's complaint seeks three (3) forms of relief.  In his prayer for relief, plaintiff requests (I) removal of all major misconduct points, "after [his] evidence is proclaimed . . . to be [sufficient][;]" (II) approximately $2,000.00 "to pay [filing] fee only or [a] mandate[d] disposition of [the] [filing] fee[;]" and (III) reclassification to a lower level [Level I] "where [he is] around people of [his] own kind to avoid hate crime on transgender."  Doc. Ent. 1 at 3.

On May 20, 2010, Judge Friedman referred this case to me to conduct all pretrial matters. Doc. Ent. 10.

## C.    The Court's February 15, 2011 order dismissed or granted summary judgment as to plaintiff's second (monetary damages) and third (reclassification to a lower management level) claims for relief.

On June 23, 2010, defendant MDOC filed a Rule 12(b)(6) motion to dismiss for failure to state a claim and Rule 56(b) motion for summary judgment for failure to exhaust administrative remedies.  Doc. Ent. 11.  Therein, defendant MDOC's motion argued:

  I.  The Eleventh Amendment bars Plaintiff's request for monetary damages

---

identification of any individual defendants.  Doc. Ent. 13 at 1–
2.  Finally, plaintiff's August 19, 2010 notice of change of
address/contact information is similarly void of identification
of individual defendants.  Doc. Ent. 15 at 1.

from MDOC.  Plaintiff seeks monetary damages in the amount of $2000.00 from MDOC.

II.     Plaintiff's is unable to have his major misconduct overturned in this proceeding as he has failed to exhaust administrative remedies available to him before implementing the present suit.

III.    Plaintiff's request to be reclassified a Level I prisoner is improper in this proceeding as he has failed to take advantage of the remedies available to him in the prisoner grievance process before filing the present claim.

Doc. Ent. 11 at 8-9, 10-12, 12-15; *see also* Doc. Ent. 11 at 3, 15.  Plaintiff filed a response to this motion on July 9, 2010.  Doc. Ent. 13.[8]

On December 16, 2010, I entered a report and recommendation regarding this motion. Doc. Ent. 16.  Therein, I concluded that plaintiff's claim for monetary damages was barred to the extent it was sought from defendant MDOC (Doc. Ent. 16 at 12-16), defendant MDOC was not entitled to summary judgment with respect to plaintiff's claim to have his major misconduct points removed (Doc. Ent. 16 at 16-20), and defendant MDOC was not entitled to summary judgment with respect to plaintiff's request to be reclassified to a lower management level (Doc. Ent. 16 at 20-24).[9]

_____

[8]On August 5, 2010, the Clerk of the Court sent Black a NOTICE REGARDING PARTIES' RESPONSIBILITY TO NOTIFY COURT OF ADDRESS CHANGE.  Doc. Ent. 14.  On August 16, 2010, Black mailed to the Court a notice that his current address was the Woodland Center Correctional Facility (WCC) in Whitmore Lake, Michigan.  The notice stated WCC was a temporary facility, and it was filed on August 19, 2010.  Doc. Ent. 15.

[9]Within this section of my report (Doc. Ent. 16 at 20-24), I stated that "if plaintiff was contesting the computation of the September 23, 2009 review performed at ICF, as evidenced by the prisoner stationery attached to his March 26, 2010 complaint (Doc. Ent. 1 at 11-12), MDOC PD 05.01.130 provides that "[i]f the prisoner believes that the security classification is the result of incorrect information or computation on the screening form, the prisoner may file a grievance as set forth in PD 03.02.130 "Prisoner/Parolee Grievances". MDOC PD 05.01.130, effective Dec.

8

On February 15, 2011, Judge Friedman entered a memorandum opinion and order
accepting and adopting my report and recommendation and granting in part and denying in part
defendant MDOC's motion.  In so doing, he noted that (a) the Eleventh Amendment barred
plaintiff's request for monetary damages; (b) there remained a material dispute as to whether
plaintiff's claim for removal of his major misconduct points had been exhausted; and (c)

> . . . if Plaintiff is dissatisfied with his Security Classification Screen/Review,[10]
> then his recourse is through the prisoner grievance process.  As there is no
> evidence that any such grievance was filed, MDOC is entitled to summary
> judgment with respect to Plaintiff's request to be reclassified to a lower
> management level.

Doc. Ent. 17 at 2.  Accordingly, he (1) granted Defendant's Motion to Dismiss Plaintiff's claim
for monetary damages; (2) denied Defendant's Motion for Summary Judgment on Plaintiff's
claim regarding his misconduct points; and (3) granted Defendant's Motion for Summary
Judgment with respect to Plaintiff's request to be reclassified to a lower management level.  Doc.
Ent. 17 at 2-3.

**D.     The Background to the Court's February 15, 2011 Conclusion that Defendant**

---

31, 2007, ¶ E."  As to this request I ultimately concluded, "the
Court should agree with defendant MDOC that, if plaintiff is
dissatisfied with his 'Security Classification Screen – Review',
'his recourse is the prisoner grievance process.'  Doc. Ent. 11
at 14.  There being no evidence that any such grievance was
filed, the Court should conclude that defendant MDOC[] is
entitled to summary judgment with respect to plaintiff's request
to be reclassified to a lower management level."  Doc. Ent. 16 at
24.

[10]Prisoner Security Classification is guided by MDOC PD
05.01.130.  Based upon the record, it appears that Security
Classification Screen Reviews regarding plaintiff were performed
on September 1, 2009; on September 23, 2009 by James Downing
(ICF); on February 8, 2010; and on May 13, 2010 by David W.
Dulworth (ARF), which concluded that plaintiff's True Security
Level was V and his Actual Placement Level was IV.  *See* Doc. Ent.
1 at 12, Doc. Ent. 11-12, Doc. Ent. 11-13.

**MDOC was not Entitled to Summary Judgment with Respect to Plaintiff's First Claim for Relief (Regarding Plaintiff's Misconduct Points).**

**1.**     As a result of the Court's February 15, 2011 order, the only claim for relief to have survived summary judgment is plaintiff's claim regarding his misconduct points.  Doc. Ent. 17. In this remaining request, plaintiff seeks removal of all major misconduct points, "after [his] evidence is proclaimed . . . to be [sufficient]."  Doc. Ent. 1 at 3.

Plaintiff's major misconduct reports are dated June 24, 2009 (Doc. Ent. 1 at 4; Doc. Ent. 11-3; Doc. Ent. 18-3) and apparently September 2009 (Doc. Ent. 1 at 13-14).  This report and recommendation assumes that plaintiff's request to have "all [of] [his] major misconduct point[s] removed[,]" Doc. Ent. 1 at 3, is based upon the points he received as a result of the June 24, 2009 major misconduct for Substance Abuse (drug test refusal) (Doc. Ent. 1 at 5).[11]

**2.**     In his July 9, 2010 response, plaintiff claimed he filed Step I and Step II grievances in ICF 0906 1483 28B.  Doc. Ent. 13 at 1.  My December 16, 2010 report and recommendation noted that, if plaintiff's assertion about grievance identifier ICF 0906 1483 28B was correct, it meant he filed a grievance regarding Ionia Maximum Correctional Facility (ICF) in June of 2009, which was consistent with his claims that the grievance was dated June 24, 2009 and was completed directly after his visit to health care.  Doc. Ent. 16 at 18-19.

---

[11]I note that there are two major misconduct reports attached to plaintiff's complaint - one dated June 24, 2009 (Doc. Ent. 1 at 4) and another apparently issued in September 2009 (Doc. Ent. 1 at 13-14).  Plaintiff claims the misconduct tickets are false (Doc. Ent. 1 at 3), and the stationery attached to plaintiff's complaint explains what he feels is false about the June 24, 2009 ticket (Doc. Ent. 1 at 6-7; *see also* Doc. Ent. 11-4, Doc. Ent. 11-5).  However, the September 2009 major misconduct is illegible (Doc. Ent. 1 at 14), and it may be that the attachment of the September 2009 misconduct is meant to justify his assertion that he only received one major misconduct in September 2009 (Doc. Ent. 1 at 11).

My report and recommendation also noted that, albeit in an unverified response, plaintiff had put forth an identifier number for a grievance filed in June 2009, and claimed he had one copy of the Step I grievance form (Doc. Ent. 13 at 1). Furthermore, I noted that, if, in fact, this grievance belonged to plaintiff, it directly contradicted Stapleton's June 22, 2010 attestation that "there are no prisoner grievances filed by Prisoner Ivan Black #497061 in the past three years." Doc. Ent. 11-9 ¶ 14. Also, Stapleton's June 22, 2010 affidavit (Doc. Ent. 11-9) was not accompanied by a Step I, Step II or Step III Grievance Inquiry; in other words, defendant had not provided evidence in the form of a printout of plaintiff's Step I, Step II and/or Step III grievances for the period relevant to this complaint.

Therefore, I noted that, at that time, the Court could not conclude, as defendant MDOC argued, that it was entitled to summary judgment with respect to "Plaintiff's request to have his guilty finding on the major misconduct of Substance Abuse (Drug Test Refusal) overturned[,]" Doc. Ent. 11 at 3, because there was a material dispute as to whether this claim was exhausted. *See* Doc. Ent. 16 at 19-20.

**3.**     As noted above, with respect to this claim, Judge Friedman specifically stated: "as Magistrate Judge Komives recommends, MDOC is not entitled to summary judgment with respect to plaintiff's claim to have his major misconduct points removed. The Court agrees with this recommendation because, at this time, there remains a material dispute as to whether Plaintiff's claim has been exhausted." Doc. Ent. 17 at 2.

**E.     Defendant MDOC's August 8, 2011 (Second) Dispositive Motion Argues that Plaintiff Did Not Properly Exhaust His Administrative Remedies.**

During August 2011, plaintiff was incarcerated at the **Saginaw Correctional Facility (SRF)** in Freeland, Michigan. *See* www.michigan.gov/corrections, "Offender Search; " *see also*

11

Doc. Ent. 18-2 (Plaintiff's MDOC OTIS Sheet).   However, the MDOC's website indicates that

plaintiff is now housed at the Michigan Reformatory (RMI) in Ionia, Michigan.  *See*

www.michigan.gov/corrections, "Offender Search."

Currently before the Court is defendant MDOC's August 8, 2011 second motion for

summary judgment.  Doc. Ent. 18.  Therein, defendant MDOC maintains that "Plaintiff failed to

properly exhaust his administrative remedies, pursuant to the [PLRA], § 42 U.S.C. § 1997e(a),

when he failed to carry his grievance through to Step III, as required by [MDOC PD]

03.02.130(B)."  Doc. Ent. 18 at 3.

Judge Friedman has referred this motion to me for a report and recommendation.  Doc.

Ent. 19.  On August 25, 2011, I entered an order setting the deadline for a response to this

motion for September 30, 2011.  Doc. Ent. 20.[12]  On January 4, 2012, I entered an amended order

setting the deadline for a response to this motion for January 31, 2012.  Doc. Ent. 21.[7]

To date, no response has been filed.  In fact, the only matters plaintiff has filed thus far in

this case are (a) his March 26, 2010 complaint (Doc. Ent. 1), (b) his same-day application to

proceed without prepayment of fees (Doc. Ent. 2), (c) his April 14, 2010 application to proceed

without prepayment of fees (Doc. Ent. 4), (d) his July 9, 2010 response (Doc. Ent. 13) to

defendant's June 23, 2010 motion to dismiss (Doc. Ent. 11), and (e) his August 19, 2010 notice

of change of address/contact information (Doc. Ent. 15).[8]

--------

[12]This order mistakenly labels the motion as having been filed by
plaintiff and the response deadline as being applicable to
defendant.  Doc. Ent. 20.

[7]The docket indicates that the amended order setting deadline
(Doc. Ent. 21) was served upon plaintiff at WCC and SRF.

[8]According to this document, plaintiff was incarcerated at the
Woodland Center Correctional Facility (WCC) in Whitmore Lake,

**F.      Fed. R. Civ. P. 56**

Rule 56(b) provides that "[a] party against whom relief is sought may move, with or without supporting affidavits, for summary judgment on all or part of the claim."

Summary judgment, pursuant to Fed. R. Civ. P. 56, may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties.

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis,* 542 P.2d 867, 872 (Wyo. 1975) (quoting BLACK'S LAW DICTIONARY 881 (6th ed.1979)).  "In evaluating a motion for summary judgment we view all evidence in the light most favorable to Plaintiff . . . and assess the proof to determine whether there is a genuine need for trial."  *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998) (citations omitted).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact.  *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986).  The moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party discharges

---

Michigan.  Doc. Ent. 15.  However, as indicated above, plaintiff is currently incarcerated at RMI.

that burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine triable issue.  Fed. R. Civ. P. 56(e); *Gregg*, 801 F.2d at 861.

"Although the nonmoving party 'may not rest upon the mere allegations or denials' of his pleading, Fed. R. Civ. P. 56(e), a verified complaint . . . satisfies the burden of the nonmovant to respond." *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999).[9]  "[A] verified complaint . . . would have the same force and effect as an affidavit and would give rise to genuine issues of material fact."  *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).  However, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  *See also Hamilton v. Roberts*, No. 97-1696, 1998 WL 639158, *5 (6th Cir. Sept. 10, 1998) (personal knowledge required); *Daniel v. Cox*, No. 96-5283, 1997 WL 234615, *2 (6th Cir. May 6, 1997) (conclusory assertions are insufficient for purposes of surviving summary judgment); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (citing *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969)) (cannot consider hearsay evidence).

"Demonstration of simply 'metaphysical doubt as to the material facts' is insufficient." *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992), citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986), "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is

---

[9]Plaintiff's complaint is signed under penalty of perjury.  Doc. Ent. 1 at 3.

not significantly probative, summary judgment may be granted." *Id.* at 246-250 (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a). *Anderson*, 477 U.S. at 250. Consequently, a non-movant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

**G.    The Court Should Not Dismiss this Matter.**

**1.    The Court should conclude that plaintiff did not exhaust his administrative remedies to the extent his first claim for relief was grievable and is encompassed in ICF-09-06-01483-28b.**

**a.**    My December 16, 2010 report and recommendation granted the parties leave to present the Court with further documentation of plaintiff's grievances, such as copies of the grievance forms or copies of MDOC Grievance Inquiries, in objection to this report and recommendation. Doc. Ent. 16 at 20 n.22. No objection was filed. As noted above, Judge Friedman accepted and adopted my December 16, 2010 report and recommendation (Doc. Ent. 16) on February 15, 2011 (Doc. Ent. 17).

**b.**    It appears that defendant MDOC took my December 16, 2010 suggestion when filing the instant motion on August 8, 2011. Attached to defendant MDOC's motion is a copy of plaintiff's June 24, 2009 Step I grievance form in ICF-09-06-01483-28b, wherein plaintiff complained:

> I told the Officer at the Control Center I am a GID prisoner and would not be peeing in front of an officer that was purposely trying to see my private area.
>
> On the above date [June 24, 2009][,] I was in [the] Control Center for about 30 [minutes] when officer name unknow[n] asked me to pee[.] I am [illegible] hours up was stated by the officer after he said [it has] been an hour which it was not[.] [H]e then asked me to pee[.] I was ready[.] He wrote me a pass and I left Control

15

> Center / [MDOC PD] 03.03.130 [HUMANE TREATMENT AND LIVING
> CONDITIONS FOR PRISONERS][.]  I am I am [sic] protected from retaliation[.]
> [I]t also seemed to be a setup for gratification.

Doc. Ent. 18-5.  By a June 30, 2009 response, M. Breedlove informed plaintiff that his grievance
was being rejected and returned on the basis that it was vague, illegible or contained extraneous
information.  Doc. Ent. 18-6.

Defendant MDOC also provides the August 1, 2011 affidavit of Richard D. Russell,
Manager of the Grievance Section of the MDOC.  Doc. Ent. 18-7 ¶ 1.  Russell attests that he had
"caused a search of the database relevant to step III grievance appeals filed by the plaintiff and
found that there have been no grievances filed to step III by the plaintiff."  Doc. Ent. 18-7 at ¶
18.  Included with the affidavit are an MDOC Prisoner Step III Grievance Report (Doc. Ent. 18-
7 at 6) and an MDOC Step III Grievances by Prisoner (Doc. Ent. 18-7 at 7), each dated August
2, 2011, which together indicate that there is no record of a Step III appeal for plaintiff for the
period 1999-present.

**c.**      42 U.S.C. § 1997e governs suits by prisoners.  With respect to the applicability of
administrative remedies, the statute provides, "[n]o action shall be brought with respect to prison
conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in
any jail, prison, or other correctional facility until such administrative remedies as are available
are exhausted." 42 U.S.C. § 1997e(a).  "The plain language of the statute makes exhaustion a
precondition to filing an action in federal court[.]  The prisoner, therefore, may not exhaust
administrative remedies during the pendency of the federal suit."  *Freeman v. Francis*, 196 F.3d
641, 645 (6th Cir. 1999) (citations omitted).

The United States Supreme Court has directed that "the PLRA exhaustion requirement
requires proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  The Supreme Court has

also stated that "failure to exhaust is an affirmative defense under the PLRA," and that "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

**d.**      Citing portions of the stationery attached to plaintiff's complaint (Doc. Ent. 1 at 6-7) - which, *inter alia*, challenges the June 24, 2009 major misconduct for substance abuse (drug test refusal) - defendant MDOC contends that the allegations "do not appear in [plaintiff's] Grievance, nor were these allegations raised at the Major Misconduct Hearing." Doc. Ent. 18 at 7. In support of its motion, defendant MDOC argues that plaintiff "failed to appeal the denial of his Step I Grievance[.]" Doc. Ent. 18 at 9-12.

To the extent plaintiff's first claim for relief is encompassed in ICF-09-06-01483-28b, plaintiff did not exhaust his administrative remedies in accordance with MDOC PD 03.02.130 ("Prisoner/Parolee Grievances") and 42 U.S.C. § 1997e(a). First, defendant argues that "[p]laintiff did not properly exhaust his administrative remedies because he did not follow his Step I Grievance through to Step III." Doc. Ent. 18 at 10. It does not appear that he filed his grievance ICF-09-06-01483-28b through all three steps of the MDOC's Grievance Process. *See* MDOC PD 03.02.130, ¶ B. It is defendant MDOC's position that, "if Plaintiff Black wanted to appeal the [June 30, 2009] denial of his Step I Grievance[], he had to do so within 10 business days of receiving the Response." Doc. Ent. 18 at 6, MDOC PD 03.02.130(BB).[10] According to

---

[10]"A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response. To file a Step II grievance, the grievant must request a Prisoner/Parolee Grievance Appeal (CSJ-247B) from the Step I Grievance Coordinator and send the completed form to the Step II Grievance Coordinator designated for the facility, field office, or other office being grieved

defendant MDOC, "Plaintiff Black did not file a Step II appeal[,]" and he "did not exhaust this Grievance through to Step III." Doc. Ent. 18 at 6, 10. Even if, as plaintiff previously claimed, he filed Step I and Step II in ICF-01483 (Doc. Ent. 13 at 1), the allegation that plaintiff did not file a Step III grievance appeal is supported by Russell's affidavit and attachments (Doc. Ent. 18-7).

Second, defendant MDOC is correct that "[p]laintiff's allegations that corrections officers are retaliating against him and wrongfully issuing misconduct tickets and alleged sexual misconduct are grievable issues. Doc. Ent. 18 at 11-12. Defendant MDOC points out that ICF-01483 was not denied as non-grievable. Rather, it was denied "because it was illegible and vague." It is defendant MDOC's position that plaintiff "could have filed a Step II and Step III appeal." However, "[a]s Plaintiff has not pled any sufficient reason why he was unable to do so, Plaintiff's Complaint should be dismissed for failure to exhaust his administrative remedies." Doc. Ent. 18 at 12.

For example, MDOC PD 03.02.130 provides that "[a] grievant in a CFA institution may file a Step I grievance directly with the inspector of the institution at which the prisoner is housed instead of with the grievance coordinator as set forth in Paragraph V if the grievance alleges conduct which falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140 'Internal Affairs'; this includes claims alleging staff sexual misconduct." MDOC PD

---

***within ten business days*** after receiving the Step I response or, if no response was received, ***within ten business days*** after the date the response was due, including any extensions. If the office being grieved does not have a designated Grievance Coordinator, the grievant is to send the grievance to the Step II Grievance Coordinator for the facility in which s/he is housed or appropriate field office for processing."  MDOC PD 03.02.130 ¶ BB, effective July 9, 2007 (emphasis added); Doc. Ent. 18-8.

03.02.130 ¶ Q.

This same policy also provides that "[g]rievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures. Grievances also may be filed in accordance with OP 03.02.130-A "State Administrative Board Prisoner Property Reimbursement" if the grievant is seeking reimbursement for property lost or destroyed while in the Department's sole possession."  MDOC PD 03.02.130 ¶ E.

Furthermore, MDOC PD 03.02.130 sets forth certain non-grievable issues:

1.   A grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant. If a CFA prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum as provided in PD 04.01.150 "Prisoner Housing Unit Representatives / Warden's Forum".

2.   Decisions made in hearings conducted by hearing officers of the State Office of Administrative Hearings and Rules, including property disposition, and issues directly related to the hearing process (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing).

3.   Decisions made by the Parole Board to grant, deny, rescind, amend or revoke parole, or not to proceed with a lifer interview or a public hearing.

4.   Decisions made in minor misconduct hearings, including property disposition.

5.   Issues not within the authority of the Department to resolve. The grievant shall be told who to contact in order to attempt to resolve the issue, if known.

MDOC PD 03.02.130 ¶ F.  As defendant MDOC explains, plaintiff may grieve "retaliation on behalf of a[n] MDOC staff member or other misconduct in connection with the issuance of a misconduct ticket, so long as Plaintiff is not grieving the decision of the hearing officer itself." Doc. Ent. 18 at 12.

19

*Therefore, defendant MDOC is entitled to summary judgment as to plaintiff's first claim for relief to the extent it alleges that the June 24, 2009 misconduct was wrongfully issued, because plaintiff has not exhausted his administrative remedies as to such a claim.*[11]

**2.    As to the non-grievable portion of plaintiff's first claim for relief, the Court should conclude that defendant MDOC is not entitled to summary judgment on the basis that plaintiff has not exhausted his administrative remedies.**

Finally, this report interprets at least a portion of plaintiff's first claim for relief - removal of points for his major misconduct ticket(s), "after [his] evidence is proclaimed . . . to be [sufficient][,]" Doc. Ent. 1 at 3, as challenging the hearing officer's July 14, 2009 decision regarding the June 24, 2009 major misconduct for substance abuse (drug test refusal) (*see* Doc. Ent. 1 at 5).[12]  Such a claim is non-grievable under MDOC PD 03.02.130 ¶ F(2).

Perhaps defendant MDOC anticipated such an interpretation of plaintiff's first claim for

---

[11]The Court recognizes the possibility that plaintiff could have filed more than one grievance which is relevant to this claim. For example, as noted above, an attachment to plaintiff's March 26, 2010 complaint alleges that plaintiff wrote several grievances and was subjected to hate crimes on the basis of his transgenderism.  Doc. Ent. 1 at 7.  Then, in his July 9, 2010 response, plaintiff claimed he filed Step I and Step II grievances in ICF 0906 1483 28B.  Doc. Ent. 13 at 1. Furthermore, although defendant MDOC had initially taken the position that plaintiff had not filed a prisoner grievance in the last three years (Doc. Ent. 11-9 ¶ 14), defendant MDOC later conceded that "on June 30, 2009, Plaintiff did in fact file a [Step I] Grievance [ICF-09-06-01483-28b]."  Doc. Ent. 18 at 10. However, plaintiff has not filed a response to the instant August 8, 2011 motion.  In fact, plaintiff has not filed anything in this case since his August 19, 2010 notice of change of address/contact information (Doc. Ent. 15).  And, even though exhaustion is an affirmative defense, the argument that a grievance other than ICF-01483 which is relevant to plaintiff's first claim for relief exists is one to be made by plaintiff in response to defendant MDOC's August 8, 2011 motion (Doc. Ent. 18).

[12]*Haines v. Kerner*, 404 U.S. 519, 520 (1972) ("the allegations of the pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers[.]").

relief, as it previously contended that plaintiff had not availed himself of his remedies under the

Prisoner Hearings Act, Mich. Comp. Laws §§ 791.251-791.256.  In its June 23, 2010 dispositive

motion, defendant had stated that "[i]n regards to Plaintiff's request to have his guilty finding on

the major misconduct of Substance Abuse (Drug Test Refusal) overturned, Plaintiff failed to

exhaust his administrative remedies because he did not file a petition for judicial review after his

request for a rehearing was denied."  Doc. Ent. 11 at 3 ¶ 3.  In other words, "[p]laintiff did not

file a petition for judicial review of the hearings officer's decision."  Doc. Ent. 11 at 8.

Specifically, defendant MDOC had argued that "[p]laintiff[] [was] unable to have his major

misconduct overturned in this proceeding as he ha[d] failed to exhaust administrative remedies

available to him before implementing the present suit."  Doc. Ent. 11 at 10-12.  After

acknowledging the August 7, 2009 disapproval of plaintiff's July 14, 2009 request for rehearing

(Doc. Ent. 11-7), defendant MDOC cited Mich. Comp. Laws § 791.255(2)[13] and stated that

"Plaintiff failed to file a petition for judicial review."  Doc. Ent. 11 at 11.

      However, a plaintiff's ***available judicial remedies*** need not be exhausted before bringing

a 42 U.S.C. § 1983 claim.  "[T]here is a well-established distinction between administrative and

judicial remedies and Congress, in terms, did not mandate that the prisoner must exhaust his

administrative remedies and exhaust his right to judicial appellate review before bringing an

action within section 1997e(a)."  *Jenkins v. Morton*, 148 F.3d 257, 259 (3d Cir. 1998).

---

[13] "Within 60 days after the date of delivery or mailing of notice of the decision on the motion or application for the rehearing, if the motion or application is denied or within 60 days after the decision of the department or hearing officer on the rehearing, a prisoner aggrieved by a final decision or order may file an application for direct review in the circuit court in the county where the petitioner resides or in the circuit court for Ingham county."  Mich. Comp. Laws § 791.255(2).

"Exhaustion under § 1997e(a) is administrative only; a prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court; but a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. Failure to do what the state requires bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). *See also Jenkins*, 148 F.3d at 259 ("we naturally are reluctant to apply section 1997e(a) to mean other than what it says: the prisoner must exhaust his 'administrative remedies' as that term is conventionally understood, but need not exhaust state judicial remedies before bringing an action governed by that section."); *Mullins v. Smith*, 14 F.Supp.2d 1009, 1012 (E.D. Mich. 1998) (Gadola, J.) ("Plaintiff has submitted a copy of a request for a rehearing. Decisions made in hearings by hearings officers are non-grievable. Therefore, plaintiff could not have filed meaningful grievances concerning his major misconduct hearing results. A prisoner may appeal the results of a request for a rehearing to the appropriate State Circuit Court, as set forth in M.C.L.A. § 791.255. However, this is a judicial, not an administrative, remedy. Consequently, it appears that plaintiff exhausted his state administrative remedies."); *Lee v. Unknown Palus*, No. 4:04-cv-51, 2005 WL 2253582, 3 (W.D. Mich. Sept. 15, 2005) (Quist, J.) ("The court concludes that plaintiff exhausted his administrative remedies with respect to defendant Palus' hearing decisions when he filed a request for a rehearing.").[14]

---

[14] *But see Floyd v. Haire*, No. 2:09-cv-230, 2010 WL 3885488, 4 (W.D. Mich. Aug. 4, 2010) (report and recommendation of Greeley, M.J.) ("Moreover, even if Plaintiff had filed a request for rehearing, as he claims, but did not receive a response, he should have sought judicial review pursuant to MCL 791.255, which provides that a prisoner aggrieved by a final decision of a hearing officer shall file a motion for rehearing in order to exhaust his administrative remedies before seeking judicial review. In addition, if the request for rehearing is denied, the prisoner may file an application for direct review in the circuit

Furthermore, defendant MDOC's instant motion confines itself to arguing that summary judgment is appropriate because plaintiff has not complied with 42 U.S.C. § 1997e(a) and MDOC 03.02.130(B).  Doc. Ent. 18 at 3.  It does not address the aspect of plaintiff's first claim for relief that is non-grievable - plaintiff's challenge to the hearing officer's July 14, 2009 decision regarding the June 24, 2009 major misconduct for substance abuse (drug test refusal) (*see* Doc. Ent. 1 at 5).

***Therefore, to the extent plaintiff's first claim for relief challenges the hearing officer's July 14, 2009 decision regarding the June 24, 2009 major misconduct ticket for substance abuse (drug test refusal), defendant is not entitled to summary judgment on the basis of exhaustion.***  This is not to say that such a claim would survive a substantively based motion for summary judgment.  It is only to say that such a claim does not warrant summary judgment in defendant's favor based on plaintiff's failure to exhaust.

The Court may anticipate that a non-grievable claim challenging a hearing officer's decision on a major misconduct ticket would be framed in Fourteenth Amendment due process terms.  *See, i.e., Albright v. Oliver*, 510 U.S. 266, 272 (1994) ("the Due Process Clause of the Fourteenth Amendment confers both substantive and procedural rights."), *Cale v. Johnson*, 861 F.2d 943, 949 (6th Cir. 1988) (substantive due process), *Parratt v. Taylor*, 451 U.S. 527, 537 (1981) (procedural due process), *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (procedural due process).  Each of the arguments in defendant MDOC's motions for summary judgment is based upon the Eleventh Amendment or exhaustion of remedies; neither motion mentions due process

---

court in the county where the prisoner resides or in the circuit court for Ingham County. *See* MCL 791.255(1) and (2). Therefore, the undersigned concludes that Plaintiff did not exhaust his available administrative remedies as required by the 42 U.S.C. § 1997e(a).").

or the Fourteenth Amendment.  *See* Doc. Ent. 11 at 8-15,[15] Doc. Ent. 18 at 9-12.

## III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

---

[15]For example, defendant MDOC's June 23, 2010 dispositive motion argued that "[i]n regards to Plaintiff's request to have his guilty finding on the major misconduct of Substance Abuse (Drug Test Refusal) overturned, Plaintiff failed to exhaust his *administrative remedies* because he did not file a petition for judicial review after his request for a rehearing was denied." Doc. Ent. 11 at 3 ¶ 3 (emphasis added).  *See also* Doc. Ent. 11 at 11 ("Plaintiff failed to file a petition for judicial review. Therefore, even if the allegations in Plaintiff's Complaint are true, Plaintiff has failed to exhaust all state *administrative remedies* available to him before filing.") (emphasis added).

#10-11211
Black v. Michigan Department of
Corrections

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: February 29, 2012

25