UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


IVAN BLACK,

        Plaintiff,

    v.                                                         CASE NO. 2:10-CV-11211
                                                                           JUDGE BERNARD A. FRIEDMAN
                                                                           MAGISTRATE JUDGE PAUL KOMIVES
MICHIGAN DEPARTMENT
OF CORRECTIONS,

        Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S THIRD MOTION FOR SUMMARY JUDGMENT (docket #25)

I.      <u>RECOMMENDATION</u>: The Court should grant defendant's third motion for summary judgment.

II.     <u>REPORT</u>:

A.     *Background*

Plaintiff Ivan Black is a state prisoner who, at the times relevant to the instant action, was confined at the Ionia Maximum Correctional Facility. On March 26, 2010, plaintiff filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, naming as defendant the Michigan Department of Corrections (MDOC). The basic facts underlying plaintiff's suit are not disputed.

On June 24, 2009, plaintiff was transferred to Ionia and brought to the control center, where he was instructed to provide a urine sample for a random drug test. Plaintiff claimed he could not provide a sample without water. After being given water, plaintiff again refused to provide a sample. According to the officer seeking the sample, plaintiff indicated that he could not provide

a sample because he suffers from gender identity disorder (GID) and could not urinate in front of a man.  On the same date, P. Pline issued a major misconduct report charging plaintiff with substance abuse, based on his failure to provide a sample.  Pline described the violation as follows:

> At 1128 hours, Prisoner Black 497061 arrived at the control center where he was told he ha[d] to supply a urine sample for a random drug test.  At that time he was given [a] cup and water as he couldn't supply one without water.  At 1231 hours, I told Black his hour was up and he need[ed] to provide a sample.  He stated "I'm GID and I can't provide a sample for a man[.] Black did not supply [m]e with a specimen.

Def.'s 1st Mot. for Summ. J., filed 6/23/10, Ex. B, Major Misconduct Report; Compl., at 4.  Plaintiff filed a Step I grievance on June 30, 2009, in which he stated:

> I told the Officer and the Control Center I am a GID prisoner and would not be peeing in front of an officer that was purposely trying to see my private area.  On the above date (6/24/09) I was in Control Center for about 30 minutes when officer name unknown asked me to pee.  I am [illegible] hours up was stated by the officer after he said it been an hour which it was not he then asked me to pee I was ready.  He wrote me a pass and I left Control Center/ 03.03.130.  I am I am [sic] protected from retaliation it also seemed to be a setup for gratification.

Def.'s 2d Mot. for Summ. J., filed 8/8/11, Ex. D.  Plaintiff's grievance was denied, and he did not file a Step II or Step III appeal.

A major misconduct hearing was begun on July 8, 2009.  At the hearing, plaintiff claimed he had GID and therefore could not provide a urine sample.  *See* Def.'s 2d Mot. for Summ. J., filed 8/8/11, Ex. C, Major Misconduct Hr'g Report; Compl., at 5 [hereinafter "Hr'g Report"].  Plaintiff read a written statement he had prepared.  Based on plaintiff's statement, the hearing was continued "to ask health care to review prisoners [sic] record and give opinion as to whether prisoner should be able to provide a urine sample for the purpose of drug testing within the hour time limit."  *Id*. The hearing recommenced on July 14, at which time the hearing officer considered the statement of Nurse LeBarre "indicating prisoner's Gender Identity Disorder should not have any impact on

2

his ability to urinate and there is no reason he should not have been able to provide the urine

sample." *Id*. The hearing officer found plaintiff guilty of the major misconduct, reasoning:

> Hearing officer finds based on the statement of officer Pline that prisoner was called
> to the control center at 1128 hours and informed he was to provide a urine sample
> for drug testing. He was given more than an hour's time and access to water and
> after he stated he could not provide the sample in front of a man. Hearing officer
> also finds based on the statement of RN LeBarre that there is no reason why prisoner
> should not have been able to provide a urine sample within the time allotted.

*Id*. Plaintiff was given three days in top-lock as a result of the misconduct. *See id*. Plaintiff

requested a rehearing, stating that he "never said that the [GID] had anything to do with me [using]

the 'restroom,'" that Officer Pline requested his urine so that Pline could drink it, and that his

objection was to urinating with another officer watching him. *See* Def.'s 1st Mot. for Summ. J.,

filed 6/23/10, Ex. F. Plaintiff's request for rehearing was denied by Hearings Administrator

Stapleton. *See id*. In light of this misconduct and subsequent misconducts, plaintiff's security

classification was raised from Level I to Level V, and for a time plaintiff was placed in

administrative segregation. *See* Compl., at 12-15; Def.'s 1st Mot. for Summ. J., filed 6/23/10, Exs.

K-L.

Plaintiff commenced this action on March 26, 2010. The entirety of the "Statement of Facts"

section of plaintiff's form complaint states:

> "[F]alse charges[.] Staff seems to make up [their] own rules[.] I was over 6 month[s]
> ticket free when staff who are ex-convicts, [felons], and criminal[s] who should not
> be in charge of young (myself) inmates. They press . . . us for sexual favors and
> when [I do not] give it to them they write false claims[.] [Everything] I state can be
> backed up 100% by Policy Directive[s][.] I [am claiming] false major
> misconducts[.]" Also, it appears plaintiff is alleging that "staff is using young people
> . . . to profit other off the computer[,]" and staff is "jealous of Black History
> Month[.]" Furthermore, plaintiff claims, he is a "victim of [his family's] honorable,
> good, honest works."

Compl., at 3. Plaintiff's complaint seeks: (1) "[t]o have all my major misconduct point[s] removed

after my evidence is proclaimed to be sufficient"; (2) "(about) $2,000.00 to pay filing fee only"; and (3) to be "re-classified to an [sic] lower level where I am around people of my own kind to avoid the hate crime on transgender.  Level 1."  *Id.*

Through rulings on defendant's two previous motions for summary judgment, the Court has dismissed plaintiff's claims seeking monetary damages and reclassification, as well as any retaliation claim that plaintiff may be attempting to assert, leaving plaintiff's claim seeking removal of the misconduct points as the only remaining claim.  The matter is currently before the Court on defendant's third motion for summary judgment, filed on June 6, 2012.  In this motion, defendant seeks summary judgment on plaintiff's remaining claim because there is no genuine issue of material fact that the evidence supports the misconduct finding, and because the resulting three days in top-lock did not impose an atypical and significant hardship on plaintiff.  Plaintiff filed a letter-response to the motion on July 13, 2012.  In his response, plaintiff indicates that he did ultimately provide a urine sample, and that he was not able to provide a urine sample at the time because of a gunshot wound in his groin area.  Defendant filed a reply on July 27, 2012.  For the reasons that follow, the Court should grant defendant's motion.

B.    *Legal Standard*

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A fact is material only if its resolution will affect the outcome of the lawsuit."  *Hedrick*, 355 F.3d at 451-52

(citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case."  *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also*, FED. R. CIV. P. 56(c)(1) (moving party may meet its burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).  To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue.  As the Supreme Court has explained, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to  return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-

5

23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party."  *Sutherland*, 344 F.3d at 613.

C.      *Analysis*

Although plaintiff does not indicate the basis of his claim, from the nature of the claim it is clear that plaintiff is alleging a violation of his Fourteenth Amendment right to due process of law. The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend XIV, § 1.  By its terms, therefore, the particular procedures required by the clause apply only to deprivations of "life, liberty, or property;" they do not apply to deprivations of other interests.  *See Board of Regents v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.").  Nothing in plaintiff's complaint implicates a protected interest in life or property, and thus the only question is whether the major misconduct finding and resulting punishment implicate a liberty interest.  The Court should conclude that they do not.

First, plaintiff cannot establish a violation of a protected liberty interest based on his allegation that the misconduct was false or not supported by the evidence.  "A prisoner has no constitutionally protected immunity from being falsely accused of misconduct.  The prisoner only has a right to due process of law during the disciplinary proceedings against him concerning the allegedly false misconduct charges."  *Riley v. Church*,  874 F. Supp. 765, 768 (E.D. Mich. 1994) (Gadola, J.) (citations omitted), *aff'd,* 81 F.3d 161 (6th Cir. 1996); *accord Jackson v. Madery*, 158

Fed. Appx. 656, 662 (6th Cir. 2005) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are adjudicated in a fair hearing."); *Cromer v. Dominguez*, 103 Fed. Appx. 570, 573 (6th Cir. 2004); *Jackson v. Hamlin*, 61 Fed. Appx. 131, 132 (6th Cir. 2003). Plaintiff does not allege that he was not afforded a fair hearing: he was allowed to present his version of events, and the hearing officer even continued the hearing to obtain a medical opinion regarding plaintiff's ability to urinate. Nor can plaintiff challenge the findings of the hearing officer. "[F]ederal courts do not have jurisdiction to relitigate *de novo* the determinations made in prison disciplinary hearings. So long as some evidence in the record supports the factfinder's decision, the factfinder's resolution of factual disputes, including credibility disputes between witnesses, is binding and final." *Mullins v. Smith*, 14 F. Supp. 2d 1009, 1012 (E.D. Mich. 1998) (Gadola, J.) (citing *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455-56 (1985)). The relevant MDOC policy directive requires inmates to submit to random drug tests by providing a urine sample, and provides procedures for an inmate to be given access to fluids and privacy if necessary. *See* Def.'s 3d Mot. for Summ. J., Ex. B, MDOC PD 3.03.115(U)-(W). The policy directive further provides that "[p]risoners who refuse to submit to substance abuse testing shall be charged with a major misconduct for substance abuse[.]" *Id.*, ¶ (II). Here, there was some evidence that plaintiff refused to submit to substance abuse testing. Officer Pline testified that plaintiff refused to provide a sample, even after being given water and time to produce a sample. This is sufficient to constitute "some evidence" that plaintiff refused to submit to substance abuse testing. Plaintiff's current claim that he was unable to produce a sample because of his gunshot wound does not overcome the "some evidence" standard. First, there is nothing in the record to suggest that Pline or the hearing officer were aware of this; in his initial responses

plaintiff repeatedly referred to his need for privacy, not to any medical problem in urinating. It was not until after he had been found guilty of the misconduct that he first raised his alleged medical problem as a basis for his failure to provide a sample. Further, the record does not support plaintiff's claim that his gunshot wound affected his ability to produce a urine sample. In support of his claim, plaintiff submits an emergency treatment "Final Report" from Detroit Receiving Hospital, dated November 6, 2004. This report, however, does not support plaintiff's claim. The report does indicate that plaintiff suffered a gunshot wound to the right groin. However, it also indicates that plaintiff sought treatment for pain management as a result of this wound; it does not suggest that plaintiff sought treatment for any urinary problems. On the contrary, the report indicates that plaintiff had no "problems with bowel movements or bladder control," and that plaintiff "denie[d] any urethral discharge or any other complaints at this time." *See* Compl., at 8-9. Because plaintiff was given a fair hearing and there was some evidence to support the hearing officer's decision, plaintiff cannot establish a due process violation based on the allegedly false misconduct report.

Further, plaintiff cannot establish a due process violation because the result of the hearing–placement in top-lock for three days and the assessment of major misconduct points–does not implicate a protected liberty interest. To show that his due process rights were violated plaintiff must show that his placement in segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff has made no allegations that his confinement in administrative segregation imposed any hardship on him significantly more restrictive than the normal incidents of prison confinement. *See Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (placement in administrative segregation is generally not an atypical and significant hardship, even when such segregation has

8

a substantial adverse impact on the prisoner); *see also*, *Neal v. District of Columbia*, 131 F.3d 172, 175 (D.C. Cir. 1998); *Holliman v. McAdorn*, No. 96 C 3701, 1997 WL 13704, at *2 (N.D. Ill. Jan. 8, 1997). Moreover, the loss of disciplinary credits does not implicate a protected liberty interest. As the Sixth Circuit has explained in rejecting a similar claim:

> As *Sandin* makes clear, "finding[s] of misconduct, even findings that could lengthen a prison sentence, do not implicate a protected liberty interest so long as the parole board retains discretion to release a prisoner based on a "myriad of considerations" and so long as the prisoner may "explain the circumstances behind the misconduct record" to the board. 515 U.S. at 487. In this instance, the major misconduct finding resulted in the accumulation of "disciplinary time" to [plaintiff's] sentence, a factor submitted to the parole board as one among many other considerations they may account for in deciding whether to grant early release. Mich. Admin. Code R. 791.5515(2), 791.7715. Because these findings represent just one among many factors that could affect the length of [plaintiff's] indeterminate sentence and because no one denies that [plaintiff] has the right to explain the circumstances of the misconduct charge, the findings do not inevitably affect the duration of [plaintiff's] sentence and do not effect an "atypical and significant hardship on [plaintiff] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483, 484; *see also Thompson v. Mich. Dept. of Corrs.*, 25 Fed. Appx. 357, 358 (6th Cir. 2002) (unpublished disposition) (concluding that a misconduct citation in the Michigan correctional system did not affect the prisoner's constitutional liberty interests).

*Nali v. Ekman*, 355 Fed. Appx. 909, 912 (6th Cir. 2009) (parallel citations omitted).

In short, plaintiff has failed to present any evidence showing that the misconduct report and the resulting punishment implicated a liberty interest protected by the Due Process Clause. Accordingly, defendant is entitled to summary judgment on plaintiff's remaining claim.

D.    *Conclusion*

In view of the foregoing, the Court should conclude that there are no genuine issues of material fact and that defendant is entitled to summary judgment on plaintiff's remaining due process claim as a matter of law. Accordingly, the Court should grant defendant's third motion for summary judgment.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives_____
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 1/23/13


The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on January 23, 2013.

                    s/Eddrey Butts_____
                    Case Manager

10